### CAROLINA SAVINGS BANK v. PARROTT.

1. A note dated in December and payable the following November for a stated sum with interest at the rate of 10 per cent. per annum, legally draws 10 per cent. until maturity, but only 7 per cent. (the legal rate) after maturity.
2. It is not usury to take interest in advance where the parties so agree; but where the note is payable at·a day certain for a sum certain, with interest from date at the rate of 10 per cent. per annum, a discount of interest on this interest renders the note usurious.
3. As the statute allows 10 per cent. interest only when so expressed in a written agreement, and as there was no written agreement here for 10 per cent. interest on interest, the discount was usurious—at least to the extent of the 3 per cent. excess over 7, the lawful rate.
4. Neither the absence of a corrupt and wilful purpose to evade the usury law, nor the usage of banks so to deal, can relieve this transaction of the legal consequences of the usury committed in the charge made.
5. Plaintiff should have had judgment only for the principal sum, without interest or costs, and defendant should have been allowed his counter-claim to the extent of double the 3 per cent. paid in excess of 7 per cent., such excess being usurious.

Before KERSHAW, J., Charleston, November, 1887.

This action was commenced April 30, 1886. The appeal was from the Circuit decree, which, having found as stated in the opinion, proceeded as follows:

My reasons for the foregoing decision are these:

The only defence set up is that of usury. The usury law of this State (18 *Stat.*, 36) declares that "no greater rate of interest than seven per centum per annum shall be charged, taken, agreed upon, or allowed, &c., except upon written contract, wherein, by express agreement, a rate of interest not exceeding ten per cent. may be charged." It is not to be denied that a special rate of interest is agreed to be paid in the written contract between the parties, and that rate is ten per cent., and therefore within the limit prescribed by the statute.

There is no difficulty so far, but the defendants contend that the transaction was tainted with usury in that the interest was added to the principal of the note from the date of its discount

to its maturity, and ten per cent. upon the aggregate of principal and interest taken by way of discount, and that the discount of the interest was illegal and usurious. If the note had been given for the aggregate of principal and interest payable at the time specified in this note, it would have amounted to the same sum of twenty-one hundred and seventy-seven 78–100 dollars. There is no difference, therefore, in the result, but both modes of expressing it come to the same thing. They both embody a contract to pay the same sum of money at the maturity of the note. The only difference is that the note drawn with interest at a given rate from date has the advantage of specifying the rate of interest which may be lawfully charged for the loan of the money procured on said note. The proper mode of calculating interest on such a note after maturity, is to add thereto the interest at the given rate to the date of its maturity, and the aggregate becomes the principal from that time.

The question arises now as to what rate of interest attaches to the contract after maturity. If that rate is not expressed in the note, it cannot exceed the lawful interest of 7 per cent. There is no question that the note does prescribe a rate of interest which is to be applied to it up to maturity ; is there anything to convey the idea that the parties agreed that the interest should be at any given rate after that ?

This point has received construction in several cases of our own. In *Gaillard* v. *Ball* (1 Nott & McC., 69), it is held that, "Where a person entered into a bond conditioned for the payment of four per cent. interest on legacies till the legatees come of age, and as each legatee comes of age to pay him his proportion of the principal, the legatees are entitled to seven per cent. interest from the time the bond becomes due." This case is cited and followed in *Langston* v. *South Carolina Railroad Co.* (2 S. C., 253), where the rule is stated that "If the debt bears a fixed rate of interest on its face higher or lower than that prescribed by law as the legal one where the parties do not contract that it shall be the rate after the debt becomes due, the interest fixed by law attaches on it for the detention of the principal sum."

In *Briggs* v. *Winsmith* (10 S. C., 133), a note in all respects similar to that in this case, was construed. The note there was

payable twelve months after date "with interest from date at the rate of twelve per cent. per annum." Says Willard, C. J. (Mc-Iver and Haskell, A. J's., concurring): "The note contains a promise to pay a sum certain at twelve months from date with interest at the rate of twelve per cent. per annum. This contract must be construed as calling for interest at that rate until its maturity. No contract appears intended to govern the rate of interest from and after the maturity of the note; consequently the damages for non-payment at maturity are governed by the rule of law fixing such damages at seven per cent." Refers to *Langston* v. *S. C. Railroad Co.*, *supra*. This rule is approved in Sharp *v.* Lee, 14 S. C., 341, where the higher rate of interest was allowed after maturity because the note was payable at one day, "interest to be paid annually." It was said that those words indicated that the intention of the parties contemplated an indefinite extension of credit at the higher rate of interest, payable annually. The rule is again affirmed by our present court in *Maner* v. *Wilson*, 16 S. C., 470. The contract there promised to pay a certain sum "with interest at nineteen per cent., payable first November next." The court says: "That contract carried the interest at nineteen per cent. until the advances were due and payable on November 1st, 1868, and no longer."

It is manifest from these cases that the rate of ten per cent. is not applicable to the interest in this case after maturity. I have, therefore, allowed interest after that time at the legal rate of seven per cent.

It is not disputed that banks are allowed to take interest in advance by way of discount. 2 McCord, 172; 3 Peters, 36; 18 Wall., 375; 83 Amer. Dec., 243; 15 John. Ch., 162; *Planters Bank* v. *Bivingsville Manufacturing Co.*, 11 Rich., 680.

As to the aggregate of principal and interest due at the maturity of the note, being a new principal upon which to compute the interest thereafter—see *Doig* v. *Barkley*, 3 Rich., 126; *O'Neall* v. *Sims*, 1 Strob., 116. In the former case, O'Neall, J., speaking for the court, says: "This contract is for the payment on the first day of January, 1841, with interest from the first day of August, 1835. What is that but a contract to pay on the day designated the aggregate of principal and interest

then due—$1,176.42 ?    There can be no doubt of that.    If so, how can there be a doubt that it is a sum certain, ascertained to be due by writing and upon it interest follows as a matter of course."

These authorities sufficiently vindicate the decision above.

*Messrs. Boyd & Brown,* for appellant.

*Mr. C. A. Woods,* contra.

December 7, 1888.    The opinion of the court was delivered by

Mr. Justice McGowan.    On December 19, 1884, the defendant, J. N. Parrott, and a dozen other persons, signed a note to the Carolina Savings Bank, of which the following is a copy : "$2,000.    On the 1st day of November next, we or either of us promise to pay to the Carolina Savings Bank, two thousand dollars for value received, with interest from date at the rate of ten per cent. per annum"—signed by J. N. Parrott and the others. At the time the note was delivered, the sum of $1,984.28 in money was paid to the makers of the note, who from time to time made payments on it, which amounted in the aggregate to $1,-522.80 ; and the plaintiff, claiming that there is still a balance due on the note of $755.60, brought this action to recover the same.

The defendants answered that they made their promissory note, whereby they jointly and severally promised to pay to the Carolina Savings Bank the sum of $2,000 on the first day of November, 1885, with interest from date at the rate of ten per cent. per annum ; but they allege that the payments ($1,522.80) were not on December 3rd, but on November 7, 1885, leaving as the balance due, in accordance with the face of the note, $654.98, and not as claimed by the plaintiff.    And for a second defence, the defendants insist that "the plaintiff charged the defendants and reserved and secured to themselves for the loan of the money, a greater sum than by law allowed for discount or interest thereon, to wit, at the rate of ten per cent. per annum, not only on the principal or face of said note, but also on the interest that would accrue on said note according to its terms ; that said sum was

deducted and reserved from the amount of said note by the plaintiffs; that is to say, the plaintiffs charged the defendants for the loan of money on said note until the maturity thereof the sum of $193.50.

"For a counter-claim to the complaint, these defendants say that the note mentioned in the complaint was executed for the purpose of being discounted, and the plaintiffs in discounting it, unlawfully and usuriously charged and received from the defendants, for the loan of money on said note, the sum of $193.50, the same being discount or interest on said note at a greater discount than allowed by law, to wit, at the rate of ten per cent. per annum, not only on the principal or face of said note, but also upon the interest that should accrue upon said principal according to the terms of the note"—and demanded judgment against the plaintiffs for the sum of $387, this sum being double the amount of the said usurious interest so charged and received by the plaintiffs.

The parties waived a trial by jury, and submitted the issues to the court. Mr. John D. Kelly, cashier of the Savings Bank, testified that the note was discounted by the bank according to the following figures:

| | | |
|---|---:|---:|
| Note, | $2,000 | 00 |
| Interest at 10 per cent. to maturity, | 177 | 78 |
| Value of note at maturity, | 2,177 | 78 |
| Less discount interest at 10 per cent. to maturity, November 4, 1885, | 193 | 50 |
| Net proceeds of discount, | 1,984 | 28 |

This amount ($1,984.28) was paid by the bank to J. N. Parrott. The note was discounted at the rate of ten per cent. per annum, in accordance with the contract and in accordance with the invariable custom of banks in Charleston as to the manner. Payments on the note have been made, viz., $337.80 on November 4, 1885, $685 on November 5, 1885, and $500 on November 7, 1885—these credits amounting in the aggregate to $1,522.80, and endorsed on the note as of date December 3, 1885, for the reason that the credits were first placed to the credit of J. N. Parrott, and on December 3, 1885, the account of J. N. Parrott

was closed out and the amount to his credit was applied to the part payment of the note, &c.

Judge Kershaw, after finding the facts as above stated, held that the defendants were indebted to the plaintiffs in the sum of $755.60, balance due on the note, and gave judgment for the same. The defendants except and appeal to this court upon the following grounds: "I. Because his honor erred in finding as a conclusion of law, that the defendants were indebted to plaintiffs at date of said judgment in the sum of $755.60. II. His honor erred in not holding that the note in question was usuriously discounted by plaintiffs, and that no interest could be charged against defendants in computing the amount due upon the same. III. His honor erred in not finding that defendants were entitled to the counter-claim pleaded in their answer. IV. His honor should have sustained defendants' plea of usury and allowed their counter-claim, and it was error of law not so to hold and find," &c.

It strikes us that most of the seeming confusion in this case has arisen from the effort to apply the ordinary rules of bank discount to a plain promissory note, payable at a future day, with interest from date at the special rate of ten per cent. per annum. We agree with the Circuit Judge, that the contract expressed by the note was, substantially, a promise by the defendants to pay the principal with interest at 10 per cent. on November 1, 1885, viz., the sum of $2,177.28, and that such contract was not unlawful, as it was in conformity to the act "regulating the rate of interest" upon contracts, which declares that "No greater rate of interest than seven (7) per centum per annum shall be charged, taken, agreed upon, or allowed upon any contract arising in this State for the hiring, lending, or use of money or other commodity, except upon written contracts, wherein, by express agreement, a rate of interest not exceeding ten per cent. may be charged," &c. 18 *Stat.*, 36 (1882). We also agree with the judge, that by authority of the cases cited by him, the aggregate of principal and interest ($2,177.28) bore interest from November 1, 1885, only at the rate of seven (7) per cent. per annum.

But is it quite clear that the actual transaction was in precise conformity to this contract? It is true that in discounting a note in bank, the parties may arrange that the interest shall be paid

in advance, which, as we believe, is usually done by the borrower receiving that much *less* money. This is the very meaning of the word "discount," which is defined to be "To lend money, deducting interest at the time of the loan." In such case, however, as we understand it, the note is made to conform to the fact, and to bear *no interest* until its maturity (the interest to that time being embraced in it). It will be observed that the note, by its terms, was bearing interest from its date; and yet, as if it had been an ordinary bank note, the interest was assumed to have been paid in advance, and a discount of 10 per cent. charged on both principal and interest, the note still running on interest. As this might seem to be exacting interest twice (in advance, and also according to the terms of the note), the parties struck out the interest as an advance charge, but allowed to remain as such charge the discount on the interest—the effect being to reduce the amount of money actually paid to the defendants to $1,984.28, an amount below the face of the note by $15.72—the discount at 10 per cent. upon the interest.

Did this charge of $15.72, for discount at 10 per cent. on the interest, amount to usury? In the view, that, by accepting the $1,984.28, the defendants assented to the mode of discount adopted, charging interest in advance, notwithstanding the terms of the note, the bank had the right to discount the interest as well as the principal. See *Planters Bank* v. *Bivingsville Manufacturing Company*, 11 Rich., 680; *Fleckner* v. *Bank of the United States*, 8 Wheat., 354. But did the bank have the right to discount the interest at 10 per cent.? We think not. The usury law before cited is very positive and peremptory, that "No greater rate of interest than (7) per cent. shall be charged," &c., "except upon written contract, wherein, by express agreement, a rate of interest not exceeding ten per cent. may be charged," &c. The note in this case in writing did contain an "express agreement" that the interest should run to the maturity of the note at the rate of 10 per cent. per annum; but we do not find in it any express agreement that the interest on the interest should run at 10 per cent. The contract rather excludes that idea, for it is to pay $2,000, with interest from date at the rate of 10 per cent., without any mention whatever of interest on

interest, which, in legal effect, was not to bear interest at all until the maturity of the note, and then, as part of the principal, to bear interest only at 7 per cent. It seems to us, that, in the absence of such "express written agreement," the bank was without authority to charge a discount of 10 per cent. upon the interest, and that such charge, at least to the extent of three per cent., the excess over seven, the lawful interest, was usurious. To allow such agreement by parol to be enforced as legal would be in direct violation of the express terms of the usury law and its plain purpose, which, as we think, does not contemplate a valid parol agreement to pay interest on a written contract at a greater rate of interest than 7 per cent.

It is earnestly insisted, however, that the note on its face is not usurious, and that the taking of the discount at 10 per cent. on the interest was outside of the contract, and being merely the result of discounting the note in the ordinary way, and in accordance with the established usage of the banks in Charleston, was not a wilfully corrupt agreement to take more interest than the law allowed, and therefore was not usury. It is true, there are some authorities which seem to sustain the view, that, to constitute usury, the "taking" must be wilfully and knowingly corrupt, notably the case of *Bank of the United States v. Wagener*, 9 Peters, 400. But, as we understand it, the rule is different in this State. The words of our usury law are mandatory, that no greater rate of interest than 7 per cent. shall be "charged, taken, agreed upon, or allowed," &c. "After the facts are ascertained, whether a contract is usurious is a question of law, and proof that the agreement is corrupt is not necessary; for a contract may be usurious, though the parties did not know that it was contrary to law." *Thompson v. Nesbit*, 2 Rich., 73; *Brummer v. Wilks*, 2 McCord, 178. "Any usurious agreement contemporaneous with the making of a security and connected therewith will taint the security itself." *Harp v. Chandler & Neel*, 1 Strobh., 461.

As to the alleged usage of the banks, it cannot be necessary to do more than to quote the remarks of Chief Justice Moses in the case of *Gilliland v. Phillips*, 1 S. C., 156: "It is said by counsel that hundreds of associations similar to those organized by the plaintiffs had been engaged in the business of lending money

upon bonds identical with the one under consideration. It might have been added, too, that as soon as the question was made in the courts. they were declared usurious. Men may enter into any agreements they please, and, as between themselves, may either respect or disregard them. When, however, they are submitted to the courts for adjudication, they must be tested and governed by the law," &c. It is the plain duty of the court to announce the law, as they understand it.

We are constrained to hold that the "taking" in advance of a discount of 10 per cent. upon the interest of the note sued on, was more than the law allowed by three per cent. ; and therefore being usurious, it was error to give the plaintiff judgment for more than "the principal sum so lent," viz., $1,984.28, after the allowance of all just credits, "without interest or costs." We also think that it was error to disallow the counter-claim of the defendants, as an additional forfeiture, to the extent of double the sum "so received in excess" of seven per cent. upon the interest, under the second section of the usury law, *supra*, which declares, "That any person or corporation, who shall receive as interest any greater amount than is herein provided for, shall, in addition to the forfeiture herein provided for, forfeit also double the sum so received, to be collected by a separate action, or allowed as a counter-claim to any action brought to recover the principal sum," &c.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial, according to the conclusions herein announced.[1]