## J. W. Bothwell v. Farmers & Merchants State Bank & Trust Co. of Rusk, Texas.

No. 5559. Decided June 18, 1930.
(30 S. W., 2d Series, 289.)

*Guinn & Guinn,* for appellant.

The question of whether or not the charging of interest in advance at the rate of ten per centum per annum is usury has been resolved by the Commission of Appeals for the Supreme Court in Shropshire v. Commerce Farm Credit Co., 280 S. W., 181.

It will be noticed that the notes provided for ten per centum per annum with the interest payable annually in advance, even after the maturity of the note; this would give the holder the right to collect the ten per centum interest even though it was not due and was not earned. The other noticeable feature of the note was that all past due interest bears interest at the rate of ten per centum per annum; as a result, the ten per centum per annum in advance would bear interest at the rate of ten per centum per annum and in case the interest was not paid, it would make the original debt bearing a total of eleven per centum per annum upon the contract by this compound interest stipulation with reference to the interest being payable in advance. Likewise, if it was paid in advance, the interest at the rate of eleven and one-ninth per centum (11-1/9%) per annum would be the rate charged for the use of the money that the debtor actually had. The notes being in a series and providing that in case of default in the payment of principal or any installment of interest due upon any of the notes, the owner or holder of any of them could exer-

cise the right to declare all of the notes to be due and payable in case of such default. This would, in effect, be usurious under the terms of the case of Shear. Co. v. Hall, 235 S. W., 195.

It will be noticed that all of the cases wherein the states have permitted the charging of interest in advance at the highest legal rate, the holding is specifically limited to short time loans and not allowed in cases of loans extending over a period of years. The courts have never approved of the taking of interest in advance upon loans extending over a period of years. To do so, would, in effect, have the debtor paying more money to the creditor for the privilege of executing a note than the debtor would actually borrow. For instance, if it was held that interest could be collected eleven years in advance at the rate of ten per centum per annum, the debtor would pay $110 for the privilege of executing a note for $100 and pay the sum of $100 down as interest and owe the $110 besides.

Compound interest can never be charged upon interest until it is earned; the effect of such would be to allow usurious interest if the total amount of interest charged exceded ten per centum per annum. Interest cannot be considered as earned under the Texas statutes until the time has elapsed for which the loan was agreed to be made and as stipulated in the contract. This, in effect, is the holding of the Texas Commission of Appeals in Shear Co. v. Hall, cited above.

The appellee pleads the National Banking Act as a justification of the taking of the usurious interest, and states that the contract as made was not usurious under the National Banking Act. We think that the facts are such that the appellee is unable to take and reap any benefits of the act, even if it were applicable to this case. The appellee is a state bank and not a national bank. If there is no showing in the record how long the national bank held this note, and the note still appears to be owned by the national bank as it has not been endorsed and is made payable to the order of the First National Bank of Rusk, Texas.

The U. S. Code (1925) prohibits the national banks from engaging in the making of loans on real estate of this nature, and at the time that the First National Bank was purported to have purchased these notes, it had no power, right or authority to do so under the statute of the United States. The result of this law of Congress, the First National Bank of Rusk, Texas, had no right to purchase the notes of the appellant's which was secured by a vendor's lien upon the land involved in count III of the plaintiff's petition, and that the appellee can not take advantage of its own wrong to perpetuate a wrong upon the appellant. In other words, the bank seeking to avail itself of the National Banking Act must comply with its terms. When the loan was supposed to have been made and when the First National Bank was supposed to have purchased these notes, the national banks were prohibited from making all loans on real estate unless it was a case where a debtor had become indebted to them and the

loans were taken for the additional security on the loan. We hardly see how the appellee can seek to justify the action of the First National Bank of Rusk, Texas, upon the ground that the National Banking Act authorized the taking of ten per centum per annum in advance when the same act prohibited the banks from making loans upon real estate. The National Banking Act could only authorize the national banks to take interest in advance upon short time loans and not loans extending over a period of years, if such is at all allowed.

*W. T. Norman* and *Smithdeal, Shook, Spence & Bowyer,* for appellee.

The great weight of authority in America and England supports the view that the taking of interest in advance at the highest rate permitted by law does not constitute usury. This is true notwithstanding that, logically, the amount of money obtained by the borrower in case the note is discounted or made available for his use in the event he pays the interest at the time the loan is obtained makes him pay a greater rate of interest on the amount borrowed than the rate allowed by law. This has been regarded as the law in Texas from the beginning of its jurisprudence down to the writing of the opinion in the Shropshire case by Judge Nickels. This was the rule prevailing in practically all the states of the Union and in England at the time our Constitution was adopted and at the time all the legislation now existing in Texas was enacted. We think a contrary holding at this time would be revolutionary and disastrous to the whole financial fabric of the state and harmful to the judiciary itself. It must be presumed, we think, that the Constitution and the legislative acts were written and adopted with this understanding. There are, perhaps, only three cases in Texas directly in point where this question was squarely presented and squarely decided. But there are a number of cases decided by the Supreme Court at various times which could not have been sustained on the facts of the cases except in recognition of the principle that payment of interest in advance does not make the contract usurious.

Under the principle contended for by plaintiff in error, if one should lend to another $100 for three months and at the end of three months collect $2.50 for the use of the money, and then lend the money again for another three months and at the end of the three months collect another $2.50, and again for three months and collect $2.50, and again for three months and collect $2.50, there would be an appreciable amount of interest collected beyond ten per cent per annum on the amount that the borrower had used. He would only have the $100 for three months, and for the second three months, $97.50, and for the third three months, $95, and for the fourth three months, $92.50, and for the last amount he would be paying approximately the same rate of interest that plaintiff in error contends the whole amount would cost him if all the interest for a year had been taken out in advance. So far as we have been able to

discover, it has never been even suggested that such a transaction, where it had not been agreed upon that the money was to be lent for a year, would be usurious. There are several cases which contend that the payment of interest monthly as it accrues, at the rate of one-twelfth of the annual amount, where the rate stipulated for is the maximum rate allowed by law, is usurious. There are a number of cases which also make the contention that if the loan is for a year and the interest is payable semi-annually at the maximum rate, that it makes the loan usurious. But these contentions, so far as the courts of Texas are concerned, have been uniformly denied. Miner v. Paris Exchange Bank, 53 Texas, 559; Vela v. Shacklett, 12 S. W. (2d) 1007.

The contract being made with the First National Bank of Rusk, Texas, to pay interest in advance at the rate of ten per cent per annum, was not unlawful, even though it contemplated the payment of ten per cent of the amount of the principal sum in advance. Evans v. National Bank of Savannah, 251 U. S., 108, 64 L. Ed., 171.

While we are confident that the contract is not usurious under the laws of Texas, and we earnestly insist that this court should so hold, nevertheless, if we be mistaken about this, we think this court is compelled to follow the rule of decision prescribed by the Supreme Court of the United States and must, therefore, hold that the contract in the instant case is not usurious. We should much prefer to have the court sustain the action of the trial court and of the Court of Civil Appeals upon the ground that the contract would not be usurious even if governed only by the laws of the state of Texas. But whatever decision this court may reach on that question will not justify it in reversing the instant case.

Mr. Justice GREENWOOD delivered the opinion of the court.

The opinion of the Court of Civil Appeals shows that it affirmed a judgment of the district court, which embraced a recovery for a balance of $1,164.80 on four promissory notes in favor of defendant in error against plaintiff in error, with foreclosure of vendors lien on 10.1 acres of land. The four notes were dated October 22, 1914, and were payable on October 22, 1915, October 22, 1916, October 22, 1917, and October 22, 1918, respectively. The notes were given in part payment for the 10.1 acres of land conveyed to plaintiff in error Bothwell by J. P. Sears and wife, but were made payable to the First National Bank of Rusk or order, and were acquired by defendant in error from the First National Bank of Rusk. The first note due October 22, 1915, was for $240 "with interest thereon from date until maturity, at the rate of ten per centum per annum, the interest payable annually in advance as it accrues." This note provided: "This note and all past due interest thereon shall bear interest from the maturity thereof until paid, at the rate of ten per centum per annum. It is understood and agreed that failure to pay this note, or any installment of interest thereon, when due, shall at the election

of the holder of them or any of them, mature all notes this day given by J. W. Bothwell to said The First National Bank of Rusk, Texas, in payment for said property."

The undisputed evidence disclosed that the interest "was figured in at ten per cent" for a year in making out the second, third and fourth notes, so that the sum appearing as principal in each of these notes actually represented principal with a year's accrued interest. The second, third and fourth notes, dated October 22, 1914, were each for $250 "with interest thereon from October 22, 1915, at the rate of ten per centum per annum, payable annually in advance as it accrues." Each of said notes contained a stipulation that failure to pay the principal or any installment of interest thereon when due should mature all the notes, at the holder's election.

The plaintiff in error plead usury as a defense to a recovery on the notes. Both the district court and Court of Civil Appeals concluded that the notes were free of usury. In its original opinion, the Court of Civil Appeals based its decision of the usury question on the holding that it was the settled rule in Texas that payment of the highest conventional rate of interest in advance was not usury. On rehearing, the Court of Civil appeals quoted with approval the statement from Webb on Usury that "the test of usury in a contract is whther it would if (fully) performed, result in securing a greater rate of profit on the subject matter than is allowed by law." 19 S. W. (2d) 923-926.

The writ of error was granted on assignments raising the question of usury. Our consideration of the case, at and since its submission, confirms the view entertained when the writ was allowed that all other questions were rightly determined in the opinion of the Court of Civil Appeals.

However, the court is unable to agree with the conclusion of the district court and of the Court of Civil Appeals that notes are free from usury which expressly provide for the payment of interest annually at the rate of ten per cent per annum in advance, and further stipulate that on failure to pay the interest in advance then interest shall be paid at ten per cent per annum not only on the principal but also on a year's interest. $24 is the maximum conventional interest for one year on a $240 note. Note one of the series before us undertakes to required not $24 but $26.40 to be paid as interest on a note in the principal sum of $240, on no other contingency than the debtor's default to pay $24 at the very time the note is taken. The same vice which inheres in the first note inheres in each of the others, despite the different dates for the payment of advance interest installments and for compounding interest.

Most text writers and many judicial opinions have pointed out how devoid of logic is the rule which sanctions the collection in advance of interest at the highest conventional statutory rate, on even short term loans, under statutes against usury.

Tyler states: "Where the lender receives the interest upon the sum,

but before the end of the term for which the money is loaned, he clearly receives more than the legal rate; and yet cases have been refrred to in preceding chapters where the practice was held not to be usurious. * * * The courts uniformly hold, at the present day, that the interest for ordinary paper having the usual time to run, such as is the practice by banks, may be taken in advance, by way of discount, and not subject the paper to the taint of usury." Tyler on Usury, Pawns & Loans, pp. 297-298.

Cyc. says: "Taking the highest rate of interest in advance, so that the borrower receives less than the principal sum he contracts to repay, is unquestionably usurious on principle, and seems at first to have been so considered in all cases. But an early concession was made to the usage among banks and other persons dealing in commercial paper whose customary short term loans made the violation of the law involved insignificant. The usage has widened, however, as is the custom of the law merchant, until at the present time it is the settled rule that upon any short term loan interest may be reserved in advance at the highest legal rate without rendering the loan usurious." 39 Cyc., pp. 948, 949.

It is likewise declared in Ruling Case Law: "As a general proposition there can be no doubt that interest at the highest legal rate may be received in advance, or that the lender may stipulate for its payment at certain periods in advance, without violating the laws against usury, although this does in reality make the interest paid, if computed on the amount actually received for use by the borrower, exceed the legal rate by the amount of the interest on the interest for the time of the debt. This construction was applied originally to the statute of 12 Anne, Blackstone conceiving that interest may as lawfully be received beforehand, for forbearing, as after. It has subsequently been uniformly followed by the courts of this country and England." 27 Ruling Case Law, sec. 26, p. 225.

In Texas the rule sanctioning the reservation of interest in advance at the highest conventional rate for a year or less is too firmly established to be departed from. Of course, the principle is the same whether interest is paid for all or a part of the year before the year's expiration. For, in either event the sum which the borrower may lawfully retain throughout the term of a year is less than the sum originally advanced, on which the interest continues to be computed. More than half a century has elapsed since the court held it was lawful to stipulate for interest at the highest lawful rate payable monthly. Miner v. Paris Exchange Bank, 53 Texas, 560. Among opinions following the Miner case are Martin v. Land Mortgage Bank, 5 Texas Civ. App., 167, 23 S. W., 1032, 1035; Webb v. Pahde, (Texas Civ. App.), 43 S. W., 19; Geisberg v. Mutual Building and Loan Ass'n (Texas Civ. App.), 60 S. W., 478, with writ of error refused; Investment Company v. Grymes, 94 Texas, 615, 63 S. W., 860, 64 S. W., 778; Vela v. Shacklett (Texas Civ. App.), 12

S. W. (2d) 1007, 1008; and Shropshire v. Commerce Farm Credit Company, 120 Texas, 400, 30 S. W. (2d) 282, this day decided.

The court has uniformly decided, and we think rightly on principle no less than on abundant authority, that interest which has already lawfully matured, may, together with principal, thereafter bear interest at the highest lawful rate. Mills v. Johnson, 23 Texas, 330; Miner v. Paris Exchange Bank, 53 Texas, 561; Roane v. Ross, 84 Texas, 46, 19 S. W., 339. Chief Justice Gaines demonstrates the soundness of this rule in Crider v. San Antonio Loan Ass'n, 89 Texas, 598-600, 35 S. W., 1037-1038, when he says:

"When the debt falls due, the creditor is as much entitled to his interest as to his principal, and if the parties have elected, in good faith, to provide for the default, and to agree that *after* maturity the interest shall bear interest, it is a contract for interest upon the forbearance of a new obligation which has accrued, and not a contract for additional interest upon the original principal. The principle is, in effect, recognized by this court in those cases in which we have held that an installment of interest, past due, becomes principal and bears interest without any express stipulation to that effect."

But the question which now confronts the court is whether a rule difficult to sustain in reason save as a rule of property, which sanctions the advanced deduction of interest at the highest conventional rate on short term loans, and which sanctions the compounding of interest at the highest permissible rate after it has run and matured for part of the term of a loan, shall be extended to countenance the compounding of interest at the highest legal rate in advance of expiration of any part of the term for which the loan is made. Common sense counsels against extension of a rule not entirely defensible on principle. No less urgent is the protest of common sense against allowing a thing to be done indirectly which the law forbids being done directly. Both Constitution and statutes in Texas emphatically condemn a direct stipulation for the payment of 11% per annum interest on a loan of money. No less ought they to be held to condemn any stipulation through which the same end may be attained, no matter what differences in phrasing may be found.

The Supreme Court of Georgia determined that even though it should be held lawful in that state to exact the payment of the maximum legal interest in advance, the lender could not lawfully deduct more by means of notes for the principal sum and for one year's maximum interest payable in advance, and for an additional sum as interest on such interest. Howell v. Pennington, 118 Ga., 494, 45 S. E., 272. To the same effect is the decision of the Supreme Court of South Carolina in Carolina Savings Bank v. Parrott, 30 S. C., 61, 8 S. E., 199.

The Supreme Court of Illinois denounced as usurious a contract which cannot be differentiated from that before us. There a national

bank held a matured note for exactly $8,000. The date the note became due the bank took a renewal note "for $8,880, payable one year from date, with interest after due at ten per cent per annum interest." As appears from the court's opinion:

"The taking of the note for $8,880 is defended by counsel for the bank as free from usury, upon the ground that the Banking law of the United States expressly authorizes the bank to reserve on loans at the rate of interest authorized by the interest laws of the State as to transactions between natural persons. It is contended that the bank might lawfully have demanded and received $800 in cash, as interest in advance upon the $8,000 of principal extended one year, and then it might lawfully have lent to Davidson the $800, in cash so received, for one year, and taken their note for $880, payable in one year, without interest,—and it is insisted that what was done was the same thing in substance, the difference in the result being merely that the amounts to be paid at the end of the year are embodied in one note instead of two." Rejecting the bank's contention, the court said: "The weakness of debtors will often lead them to make improvident promises to secure the present possession of money, or to put off the evil day when debts are due, which they would not do if they were able to pay as they go. Be this as it may, we regard the toleration of taking interest in advance at the highest rate allowed by law, as an artificial rule, resting upon long usage and authority, unsupported by any sound reasoning, and can not consent to take that artificial rule as the basis of a philosophy by which a like rule may be extended to cases not within the artificial rule. The circuit court was right in holding the note usurious." First National Bank v. Davis, 108 Ill., 636-638.

Defendant in error urges the court to uphold the notes though their terms would render the notes usurious under the laws of Texas "for the reason that the contract is governed by the statutes and the decisions of the federal courts interpreting such statutes, which permit national banks to take interest in advance at the highest rate permitted by the laws of the State in which they operate." The notes before us were originally given to a national bank but they are tainted with usury under the federal no less than under the state statutes. Mr. Justice McReynolds in the recent case relied on by defendant in error, in referring to the maximum intrest rate allowed by the law of a state, said: "That marks the limit which a national bank there located may charge upon discounts; but its right to retain so much arises from federal law. The latter also completely defines what constitutes the taking of usury by a national bank, referring to the state law only to determine the maximum permitted rate." Evans v. National Bank of Savannah, 251 U. S., 114, 40 Sup. Ct., 50, 58, 64 Lawyer's Ed., 171.

For the error of the courts below in holding the notes free from

usury, the judgments of the district court and of the Court of Civil Appeals are reversed and the cause is remanded to the district court.