## HIGGINS v. MOSSLER ACCEPTANCE CO.
### No. 10967.

Court of Civil Appeals of Texas. Galveston.

April 25, 1940.

Rehearing Denied May 30, 1940.

John B. Warren, of Houston, for appellant.

Gammage, Gammage & Bauer and Earl W. Gammage, all of Houston, for appellee.

GRAVES, Justice.

This general statement, adopted by the appellee, as qualified by "explanatory and supplementary statements in clarification thereof", is taken from the appellant's brief: "This is a suit by the appellant against the Mossler Acceptance Company to recover double the amount of usurious interest alleged to have been paid by the appellant to the appellee in the aggregate sum of $437.36, less the sum of $40.16, the balance due on the principal sum borrowed from the appellee with which to purchase

an automobile from the Harlan Hodges Motor Company, and further to recover the sum of $400.00 as damages for wrongfully taking from the appellant the automobile so purchased, with interest at six per cent per annum from October 26, 1938, and a cancellation of the note and chattel mortgage given by the appellant and owned by the appellee. The suit was tried in the court below without a jury, and at the conclusion of the appellant's evidence in chief, the appellee moved the court to render judgment for the appellee upon the evidence of the appellant, which motion the court granted, and accordingly rendered judgment. To all of which the appellant excepted and in open court gave notice of appeal to the Court of Civil Appeals of the First Judicial District of Texas at Galveston. At the same time, appellant requested the trial court to file conclusions of fact and law, which was done."

The appellee's supplementary statements are to this effect, in substance: That appellant alleged the terms of the $898.20 note he signed for the balance of the purchase-price of the automobile he bought from Hodges, which was payable in 30 monthly installments of $29.94 each, attaching also to his trial petition a copy of the chattel mortgage securing the note which he gave to the Hodges Motor Company, and which was thereafter assigned to the appellee. Then follows this statement:

"Appellant, however, wholly failed to allege in his pleading that he agreed with appellee to attempt to circumvent the usury laws of Texas, and that pursuant thereto, the note and chattel mortgage filled out in the manner pleaded was done under an agreement, device, scheme, subterfuge and conspiracy to violate the Texas usury laws, although the note and mortgage pleaded by appellant on their face provided for legal interest.

"The chattel mortgage pleaded by appellant Higgins provided, among other things, the following:

"'That E. N. Higgins of the City of Houston, in the County of Harris, and state of Texas (hereinafter termed Mortgagor) in consideration of $898.20 balance of purchase money due to Harlan Hodges Motor Company * * *.'"

It next adds a further assertion, in purport, that the trial court did not sustain appellee's motion to render judgment for it at the conclusion of appellant's evidence, as his copied statement recites, but instead, that it first heard the testimony of two of appellee's witnesses before entering such judgment.

The trial court's judgment itself contains this recitation: "* * * and plaintiff having presented his evidence in chief, and having announced that he rested, then came the attorneys for the defendant and made an oral motion that plaintiff take nothing by his suit, and that judgment be rendered for the defendant, and the Court, having heard such motion and the argument thereon, is of the opinion that said motion should be sustained, and it is hereby sustained."

█ The quoted provision in the judgment itself is nowhere impeached in the transcript, hence it is deemed to be binding upon this court, notwithstanding the appellee's assertion that two of its witnesses were first heard; even were they provisionally heard, just as it claims, there appears no showing whatever that it offered their testimony, or any other, in its own behalf; rather does it appear—presumptively at least—that it was content to have the judgment entered on its own motion and conclusion that appellant had made out no case against it. At all events, it was entered without a trial of the whole case, but for one side only.

So that, in this state of the record, this court concludes that the rule applied in Donaldson v. Oak Park Cemetery, Tex.Civ. App., 110 S.W.2d 119, is applicable here, and that this cause should be reversed, if it be found that appellant's evidence raised any material issue of fact in support of his declared-upon cause of action.

The substance of the learned trial court's findings of both fact and law was that the evidence wholly failed to show what amount of interest was either added into the principal of the note plaintiff executed, or was paid by him thereon to the defendant.

The appellant has failed to present here any assignments of error against the denial of his claim below for damages for conversion of the automobile involved, hence that feature of the controversy is not before this court.

It is thought the appellee (whose present attorney did not try the cause below), as presaged in his "supplementary statements", supra, has mistaken the essential nature of this suit as brought by the appellant, together with the probative effect, in part at

least, of the testimony he offered in support thereof; as so declared upon and sought to be proven, this was not such a case as many of the authorities appellee relies upon dealt with, that is, one where an assignee of a note and mortgage securing it, like those here involved, becomes such as an innocent purchaser of such obligations already executed between the original parties thereto; on the contrary, in this instance, by the specific pleadings as well as his entire evidence offered as in support thereof, this appellant declared in effect upon a tripartite or single-transaction contract between himself, as the purchaser of the automobile, Harlan Hodges, doing business as the Harlan Hodges Motor Company, the seller of it, and Jacques Mossler, doing business as Mossler Acceptance Company, as the lender to appellant of the money necessary to finance such sale and purchase between the other two, all three participating in the enterprise evidenced by the note, the chattel mortgage securing it, and the assignments of both to Mossler, as original principals; indeed, both such pleadings and proof set out that all three parts of the deal—that is, the note, the chattel mortgage, and the assignments thereof—had, as component parts of such resulting transaction, been originally drawn and executed in Mossler's office; in other words, the gist of the whole contract, as thus alleged and testified to by the appellant and his witnesses, is reflected in these portions of his trial petition:

"The purchase price for said new automobile was * * * $877.00, of which * * * plaintiff paid to the said Motor Company $277.00 by delivering to it an used automobile, then owned by plaintiff, at an agreed price of $277.00, leaving a balance of $600.00 due to said Motor Company on said purchase. That said Motor Company advised plaintiff the defendant would finance the purchase of said automobile and accordingly the plaintiff and said Harlan Hodges, the seller, went to the place of business of the defendant, where the defendant agreed to lend to the plaintiff $600.00, with which to complete the purchase.

"Third. In pursuance of said agreement to lend to the plaintiff $600.00, with which to complete the purchase of said automobile, the defendant, acting by and through its servants, agents and employees, caused the plaintiff to sign a promissory note for $898.20, of date September 8, 1936, due and payable to the said Harlan Hodges in thirty equal installments of $29.94 each, the first installment to be due and payable on October 6, 1936, and on the sixth day of each and every month thereafter until thirty installments had been paid, or until the full sum of $898.20 was paid, said installments to bear interest at the rate of ten per cent per annum from maturity until paid.

"Plaintiff further alleges said defendant caused plaintiff to execute and deliver a chattel mortgage on said automobile, to secure the payment of the said promissory note in the sum of $898.20, in installments as aforesaid, in which chattel mortgage it was provided that, if plaintiff should default in the payment of said installments, or any of them, according to their tenor, that all of the unpaid installments should at the option of the holder of said note, without notice of said option to anyone, become due and payable, and that the then-holder of said note should have the right to take immediate possession of said chattel and dispose of same at public sale, after first giving ten days notice of the time and place and terms of sale, or at private sale with or without notice, as said mortgagee or the then-holder of said note might elect, and collect the purchase money paid for said chattel at such sale and out of the purchase money arising from such sale, there should first be paid all costs and charges and expenses incurred in taking possession of said chattel and selling the same; second, to the cost of repairing and reconditioning said automobile so as to put same in first class condition for sale; third, to the payment of all sums then unpaid on said note, and the surplus, if any, shall be paid to the mortgagor's legal representatives.

"Plaintiff alleges the defendant caused the said Harlan Hodges Motor Company and Harlan Hodges, owner, at said time, to execute an assignment of said note and chattel mortgage to said Mossler Acceptance Company, whereby defendant became the owner and holder of said note and chattel mortgage with all of the rights, privileges and remedies of the said Harlan Hodges Motor Company. That said note, chattel mortgage, and assignment were all prepared by the defendant in the office of the said Mossler Acceptance Company on forms commonly used by said company, and were there executed at the instance and request of the defendant and were the means by which plaintiff borrowed

from the defendant the sum of $600.00, with which to complete the purchase of said automobile, and all of said papers and acts constitute a single transaction by which said loan was effected. That by said transaction and as a result of the execution of said note and chattel mortgage, plaintiff received only the sum of $600.00. * * *

"Fourth. Plaintiff alleges that the principal of said loan was the sum of $600.00 and the interest on said loan was the sum of $298.20, and that said principal and interest are incorporated in the said note and chattel mortgage and same divided into thirty equal payments of $29.94 each, and each installment included the payment of $20.00 upon the principal of said loan and $9.94 interest. * * *

"Fifth. Plaintiff alleges that, beginning on October 5, 1936, he paid twenty-six of said installments regularly, each and every month, at or before they matured, and the defendant received the same; that said twenty-six installments aggregated $778.44; that defendant applied $520 thereof to the principal of plaintiff's debt of $600.00, leaving a balance due on the principal of said debt the sum of $80.00; that defendant applied $258.44 of said aggregate sum to interest."

■ There can be no doubt that the substance of appellant's evidence—especially his own testimony—raises issues of fact over what was thus alleged to have been the essential nature of the contract itself that he was entitled to have fully tried out by the court; it is, therefore, no answer to his petition for the appellee to reply, as it in effect does, that, since the note was on its face for $898.20, and the mortgage securing it recited that such stated sum was "the balance of purchase-money due to Harlan Hodges Motor Company", the transaction was not usurious upon its face, but simply reflected a sale for credit at a higher price than for cash, inclusive of stipulated insurance; this, for the reason that, as is apparent, the appellant went further and specifically averred that, with the three parties thus acting together, he had purchased the automobile from the seller at the agreed-price of $877, of which $277 was paid by the trade-in of his old car, leaving him owing the seller only $600, which was to be financed by the appellee through the note and mortgage declared upon; that in making such loan, the appellee, without paying the appellant any money whatever and without providing for any insurance on the car, amortized such loan into this note and mortgage, incorporating into them both $298.20 for the unearned interest over the period called for and adding that to the $600 as the actual balance due on the new automobile, and nothing else, thereby making up the $898.20 so carried into both the note and the mortgage.

■ Neither can appellee's further contention that insurance carried, or to be carried on the car under the contract, cleared it of any implication of having been usurious; this, for the reason that, under both pleading and proof tendered upon that feature by the appellant, if true in fact, no insurance was ever taken out by appellee for his benefit, nor given to him; that he simply agreed with Mr. Hodges, with the knowledge and acquiescence of the appellee, that the balance due from him as the purchase-price on the car would be roughly $600—that he agreed to buy it for that deferred-payment price, over and above the $277 value of his old car, and to give therefor 24 notes at $30 a piece; that neither of the other parties told him how much the insurance on the car they talked about in his presence would be in money, nor did they ask him if he could pay for insurance in cash; that if the insurance had been around $100, he could have paid it.

Furthermore, the agreement, through such provision in the chattel mortgage, was expressly that all insurance on the car, whether by the appellant or the appellee, should be paid for by appellant, in addition to the amount he agreed to pay for the loan; then follows this stipulation in the mortgage: "If any insurance company shall for any cause refuse to insure mortgagor's interest in said chattel, such refusal shall in no manner affect the installment payments as stipulated in the mortgage."

There is neither evidence nor pleading in the record to the effect that any insurance premiums were incorporated in the $898.20 note appellant so executed and delivered to the appellee; in other words, the inference is well nigh inevitable from this triple arrangement, if so participated in by the three named persons, that appellee was to be paid $898.20, and, in addition thereto, any and all insurance-premiums it might be required to pay.

Appellant further both alleged and testified that he paid to the appellee on the principal of such debt $520, and on the interest thereunder $258.44; that of such total interest, $39.76 was paid over two years

prior to the filing of this suit, in consequence of which, he alleged, there was only $80 unpaid principal still due the appellee, which, in interest-credit and money, he tendered the latter in his pleadings.

■■ If the face of the note and mortgage, along with the assignments thereof, did not, as so alleged by appellant, reflect the true consideration for the contract actually made among these three parties, it was clearly competent for appellant to show what the actual agreement was, without a pleading of fraud, accident, or mistake; 10 Tex.Jur., page 119, paragraph 69, foot-notes 11 and 12, and cited authorities; this he undertook to do through the evidence he offered, and there was none actually offered by the appellee in its own behalf in controversion thereof. In this situation it seems plain that, if the real contract was as so alleged and testified to by the appellant, it was usurious on its face as a matter of law, under these well-settled authorities: R.S.Articles 5069, 5071, 5073; Shropshire v. Farm Credit Co., 120 Tex. 400, 30 S.W.2d 282, 39 S.W.2d 11, 84 A.L.R. 1269; Bothwell v. Farmers & Merchants State Bank & Trust Co., 120 Tex. 1, 30 S.W.2d 289, 76 A.L.R. 1480; Deming Inv. Co. v. Giddens, 120 Tex. 9, 30 S.W.2d 287; Temple Trust Co. v. Stobaugh, Tex.Civ. App., 59 S.W.2d 916, 917; Parks v. Lubbock, 92 Tex. 635, 51 S.W. 322; Galveston & H. Investment Co. v. Grymes, 94 Tex. 609, 63 S.W. 860, 64 S.W. 778; Temple Trust Co. v. Haney, Tex.Civ.App., 103 S. W.2d 1035; Hewitt v. Citizens Savings Bank, 119 S.W.2d 1073.

Indeed, it is not only self-evidently a usurious contract on its face—if the appellant only owed Harlan Hodges a $600 balance on the purchase-price of the car at the time the $898.20 note was executed by him—but it was so admitted by the appellee through his counsel, Mr. Crawford, on the trial, and stipulated in the record.

Moreover, if the testimony that the $298.20 was thus originally included as interest in making up the $898.20 note be accepted, the express provisions in the chattel mortgage authorizing the holder of the note to declare it all due, on failure of the maker to pay at maturity any installment thereof, unmistakably constituted in that respect a usurious contract upon its face; see Shropshire v. Farm Credit Company, and Temple Trust Co. v. Haney, supra.

Since, under the undisputed testimony upon that feature, the appellee did, after first collecting from appellant the first 26 of the installment notes, declare the last four due and payable under such acceleration provision, it follows as a matter of simple calculation that usurious interest was paid.

Wherefore, if the terms of the trade, the nature of the contract, and the acts of the three named parties under the same, were as this uncontroverted testimony in behalf of appellant indicates, it follows that the able trial judge's conclusions of both fact and law are without sufficient support.

■ Further discussion is deemed unnecessary, as the conclusions stated determine the merits of the appeal; since the whole cause was not tried out upon the facts, and there was error in the judgment as rendered, it will be reversed and a new trial ordered.

Reversed and remanded.