**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LIBERTY MUTUAL INSURANCE
COMPANY,
Plaintiff-Appellee,

v.

No. 96-1019

YEAR ROUND POOL, INCORPORATED,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Beaufort.
Cameron McGowan Currie, District Judge.
(CA-94-323-9-22)

Argued: October 29, 1996

Decided: December 30, 1996

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Frank Francis Pape, Jr., Hilton Head Island, South Caro-
lina, for Appellant. Charles R. Norris, NELSON, MULLINS, RILEY
& SCARBOROUGH, L.L.P., Charleston, South Carolina, for Appel-
lee. **ON BRIEF:** Timothy D. Wise, NELSON, MULLINS, RILEY &
SCARBOROUGH, L.L.P., Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Between 1987 and 1993, Liberty Mutual Insurance Company ("Liberty Mutual") provided workers' compensation insurance to Year Round Pool Company ("Year Round") under the South Carolina Assigned Risk Plan. In its initial application for insurance, Year Round stated that it had two part-time employees and an annual payroll of under $20,000. In fact, at that time Year Round employed more than twenty workers with an annual payroll of over $300,000. As a result of these misrepresentations, Year Round paid insurance premiums that were substantially lower than those it should have paid.

In subsequent years, Year Round did not correct the information supplied to Liberty Mutual. Although Liberty Mutual sent Year Round eight self-audit forms during the first four years, Year Round did not return them. Without the completed forms, Liberty Mutual presumed a 25 percent increase in payroll, and adjusted premiums accordingly. Year Round paid these increased premiums, but even with these increases, the payments remained well below what Year Round should have been paying. Between 1987 and 1992, Year Round submitted forty-four claims to Liberty Mutual. On April 13, 1992, Liberty Mutual conducted its first on-site audit of Year Round and became aware of Year Round's misrepresentations.

On July 31, 1994, Liberty Mutual filed this action, based on diversity of citizenship, against Year Round, alleging breach of contract with fraudulent intent, fraud, and constructive fraud. After a three-day trial, the jury found in favor of Liberty Mutual on all counts and returned a verdict of $208,835.00. This amount was subsequently reduced to $208,803.00 to reflect a $32.00 credit on Year Round's account. Liberty Mutual moved to amend the verdict to allow for pre-judgment interest. The court granted the motion, and assessed pre-

2

judgment interest at 8.75 percent compounded monthly, thus increasing the verdict to $345,773.00.

I.

Year Round first asserts that the district court erred in not granting its motion for judgment as a matter of law on the theory that the statute of limitations barred Liberty Mutual from bringing claims under all policies except those for 1992-93.

Under South Carolina law, a six-year statute of limitations applies to all causes of action that accrued prior to April 5, 1988. S.C. Code Ann. § 15-3-510,-530 (Law. Co-op. 1995). All claims accruing after that date have a three-year statute of limitations.§ 15-3-530. South Carolina determines accrual on the basis of the discovery rule. See Wilson v. Shannon, 386 S.E.2d 257, 258 (S.C. Ct. App. 1989). One is presumed to have discovered a cause of action"when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against the defendant might exist." Id. The focus therefore is on determining whether a party acquired knowledge of any existing facts "`sufficient to put said party on inquiry which, if developed, will disclose the alleged fraud.'" Burgess v. American Cancer Soc'y, 386 S.E.2d 798, 799 (S.C. App. Ct. 1989) (quoting Walter J. Klein Co. v. Kneece , 123 S.E.2d 870 (S.C. 1962)).

Year Round argues that several factors should have led Liberty Mutual to discover it might have claims (except for those under the 1992-93 policies) prior to February 1991. Among these factors are Year Round's submission of 32 workers' compensation claims from 28 different workers prior to February 1991 and Year Round's failure to return any of the eight self-audit forms prior to February 1991. Year Round also argues that it was improperly classified on Liberty Mutual insurance records as a company engaged in maintenance rather than in construction, and that many of its claims were for construction-related injuries.

Year Round relies on Kreutner v. David, 465 S.E.2d 88 (S.C. 1995). In Kreutner, a lender brought a negligence action against an escrow agent who had guaranteed that a borrower would repay a loan.

3

The Supreme Court of South Carolina found that the cause of action accrued when the agent failed to comply with more than nine requests for the mortgage and title policy, because at that point, the lender should have known that she might have a claim against the agent.

Year Round contends that Liberty Mutual's claim should similarly be held to have accrued after Year Round failed to return eight self-audit forms. However, Year Round's failure to complete the self-audit forms did not necessarily put Liberty Mutual on notice as to Year Round's fraud; failure to complete the forms simply led to the presumption that Year Round had increased its workforce by 25 percent. Year Round was not required to return the self-audit forms in order to obtain insurance from Liberty Mutual; in contrast, the documents at issue in Kreutner, the mortgage and title policy, were essential to the transaction.

The district court allowed all of Liberty Mutual's claims to go forward because it determined that a factual question was presented as to whether Liberty Mutual could be held to have reasonably discovered Year Round's fraudulent actions only when it conducted an on-site audit in April 1992. We agree. This question was properly presented to the jury. See Wilson Group, Inc. v. Quorum Health Resources, Inc., 880 F. Supp. 416, 424 (D.S.C. 1995) (noting that typically, "determining whether the discovery rule will relieve a plaintiff from the operation of the statute of limitations is a question for the jury"). The jury decided in favor of Liberty Mutual; there was no error.

II.

All of Year Round's remaining arguments on the merits are equally groundless.

First, Year Round contends that there was no contract between the parties. Year Round's reliance on Stanley Smith & Sons v. Limestone College, 322 S.E.2d 474 (S.C. Ct. App. 1984), is misplaced; that case involved an implied contract for which no evidence was presented. Here, there was significant evidence to support a conclusion that the parties agreed to the material terms of the contract.

4

Year Round argues that Liberty Mutual did not prove either reliance or damages, both of which are necessary elements of a fraud claim. Liberty Mutual introduced sufficient evidence of reliance. Liberty Mutual had a right to rely on Year Round's application; the very purpose of an application for insurance is to provide information upon which the insurer can rely. As for damages resulting from Year Round's misrepresentation, the usual rule is that a plaintiff may recover for "harms proximately caused by the misrepresentation." 2 Dan B. Dobbs, Dobbs Law of Remedies § 9.3(2) (1993). In accordance with that formula, Liberty Mutual requested, and the jury awarded, damages equal to the difference between the premiums it received from Year Round and those it would have received had Year Round correctly reported its annual payroll and workforce, i.e., $208,835.00.

Year Round next asserts that Liberty Mutual changed the underlying policy with regard to the classification of the nature of Year Round's work such that Year Round's endorsement was necessary, and no endorsement was obtained for policies from 1987 through 1992. But no endorsement was necessary because Liberty Mutual never changed any of these policies. Rather, Liberty Mutual sought compensation for Year Round's fraudulent misrepresentation in the initial application for insurance coverage of the nature and scale of Year Round's business. The jury awarded Liberty Mutual damages based on an assessment of what Liberty Mutual would have received from Year Round absent this misrepresentation. Seeking a remedy in court to fraud does not constitute an unauthorized change in a contract such that endorsement of the other party is required. This argument therefore fails.

Year Round also contends that the district court erred when it denied Year Round's motion for judgment as a matter of law with respect to Liberty Mutual's failure to conduct an audit within ninety days of the end of the period covered by policies. To the extent Liberty Mutual did not fulfill its responsibilities under the South Carolina Assigned Risk Plan, the State may have a possible cause of action against the insurer. This does not, however, give rise to a cause of action by a third party. Year Round erroneously relies on Boyd v. State Farm Mut. Auto. Ins. Co., 195 S.E.2d 706 (S.C. 1973); there is

5

no indication here that Liberty Mutual acted on the basis of a corporate policy that was inconsistent with statutory law.

After careful review of the record and the parties' briefs and oral argument, we similarly reject all of Year Round's remaining arguments on the merits.

III.

Year Round Pool objects on three grounds to the district court's award of prejudgment interest to Liberty Mutual in the amount of 8.75 percent compounded monthly.

First, Year Round argues that compounded prejudgment interest is not permitted under South Carolina law. That argument is well founded. Section 34-31-20 of the South Carolina Code provides:

> In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum.

S.C. Code Ann. § 34-31-20(A) (Law. Co-op. 1995). This provision applies unless there is an agreement between the parties that sets forth an interest rate. Turner Coleman, Inc. v. Ohio Constr. & Eng'g, Inc., 251 S.E.2d 738, 740 (S.C. 1979); J.C. White Lumber Co. v. Allen, 410 S.E.2d 588, 590 (S.C. Ct. App. 1991). Moreover, barring agreement to the contrary, the legal rate also applies to prejudgment interest. Englert, Inc. v. Netherlands Ins. Co., 433 S.E.2d 871, 875 (S.C. Ct. App. 1993) (per curiam) (applying legal rate to prejudgment interest). The legal rate is 8.75 percent per annum, not 8.75 percent compounded monthly.

Moreover, although compounded interest is generally disfavored, 45 Am. Jur. 2d § 76 Interest and Usury (1969), in certain circumstances it is permitted. For example, compound interest may be awarded when state law allows it to be awarded against those who have breached fiduciary responsibilities. See, e.g., Federal Sav. & Loan Ins. Corp. v. Quality Inns, Inc., 876 F.2d 353, 358-59 (4th Cir.

6

1989) (holding that plaintiff was entitled to compound prejudgment interest under Maryland law for breaching fiduciary duty); 45 Am. Jur. 2d § 80; Restatement (Second) of Trusts § 207 cmt. d (1959). In addition, courts have held that interest can be collected on overdue interest, which resembles compound interest. Carolina Sav. Bank v. Parrott, 8 S.E. 199 (S.C. 1888); 45 Am. Jur. 2d§ 83. Further, a statute may provide for compound interest. United States v. Glasser, 287 F.2d 433 (7th Cir. 1961); 47 C.J.S. Interest & Usury § 24 (1982). But here no South Carolina statute allows for compounding prejudgment interest. Nor does this case present us with a breach of fiduciary duty or interest to be collected on overdue interest. Accordingly, the district court erred in compounding interest.

Year Round also maintains that the court erred in applying the legal rate of 8.75 percent to the prejudgment interest. Prejudgment interest should be awarded at a rate that compensates a party for the delay in recovering damages. Montgomery Ward & Co. v. Collins Estate, Inc., 268 F.2d 830, 839 (4th Cir. 1959) (applying South Carolina law). The district court did not abuse its discretion in determining that the legal rate of interest represents the rate that most appropriately compensates Liberty Mutual.

Finally, Year Round disagrees with the date from which the district court awarded interest. In Babb v. Rothrock, 426 S.E.2d 789 (S.C. 1993), the South Carolina Supreme Court stated:

> The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty. . . . The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose.

Id. at 791. Accord APAC Carolina, Inc. v. Town of Allendale, 41 F.3d 157, 166 (4th Cir. 1994). Year Round maintains that prejudgment interest should be assessed from April 13, 1992, the date upon which Liberty Mutual conducted its on-site audit, rather than from February 1987. The February date meets the Babb test of "being demandable"

7

"by agreement of the parties" because the parties entered into an agreement at that time in which Year Round agreed to pay for the premiums based on the number of people working for it.

IV.

For the reasons stated above, the order of the district court is affirmed in all respects except for the compounding of prejudgment interest. The case is remanded so that the court can award prejudgment interest at the proper rate of 8.75 percent per annum.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

8