## NATIONAL BOND & MORTGAGE CORPORATION V. ETOILE MAHANEY.

No. 6762.   Decided March 27, 1935.
Rehearing overruled May 1, 1935.
(80 S. W., 2d Series, 947.)

*Floyd L. Karsten,* of Fort Worth; *C. A. Sweeton, David T. Searls, Vinson, Elkins, Sweeton & Weems,* all of Houston, for plaintiff in error.

Where the defendant in error purchased the property in controversy and assumed the payment of the loan, the assumption of the indebtedness was a part of the consideration for the purchase of the premises, and defendant in error was not entitled to avail herself of, or recover for any usury in connection with the debt. And having agreed to pay the debt agrees to pay the interest as well as the debt. Moore v. Temple Trust Co., 60 S. W. (2d) 828; Fisher v. Hemming, 164 S. W., 913, error refused; First National Bank v. J. I. Campbell Co., 114 S. W., 887; 27 Cyc., 1347; 2 Jones on Mort., sec. 744.

*Lightfoot & Robertson, Nelson L. Scurlock,* all of Fort Worth, for defendant in error.

All contracts for a greater rate of interest than ten per cent per annum are usurious and void as to such interest, and the rule requiring that payments made upon a contract affected with usury must, as a matter of law, be applied on the principal does not operate to deprive a person paying a rate of interest in excess of ten per cent per annum, of his right under the statute to sue and recover by an action for debt, double the amount of all payments collected and received as interest within two years period to the time such suit is brought. Sugg v. Smith, 205 S. W., 363, writ refused; International Bldg. & L. Assn. v. Biering, 86 Texas, 476, 25 S. W., 622; Constitution of Texas, Art. 16, sec. 11.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission.

Defendant in error instituted this suit, on December 28, 1931, to recover double the amount of alleged usurious interest claimed to have been paid to plaintiff in error on a loan of $3700.00. The case was submitted to a jury on special issues which were answered in favor of defendant in error and the trial court rendered judgment in her favor, which was modified and affirmed by the Court of Civil Appeals. 70 S. W. (2d) 236.

On November 14, 1927, one J. B. Allgood executed his promissory note for the principal sum of $3700.00, payable

to the National Bond and Mortgage Corporation, with interest from date at the rate of 6 per cent per annum, interest payable monthly as accrued, for the first thirty-six months; thereafter said note was payable in monthly installments of $54.06, the first installment to become due on the 14th day of December, 1930, and one of said remaining installments on the 14th day of each and every consecutive month thereafter until the full amount of principal on said note shall have been paid, each installment, however, to be applied, first, to the payment of interest accrued on said note to date of payment and the balance to the unpaid principal. In other words, no payment was to be made on the principal of said note until December 14, 1930, the interest in the meantime being paid monthly at the rate of $18.50.

To secure payment of such note, Allgood and wife executed unto Joe N. Green, trustee, deed in trust conveying certain real property in the City of Fort Worth.

The balance of the interest on this loan of $3700.00 was represented by two items which constituted disputed issues of fact submitted to the jury in the court's charge. *1st*: There was a note for $740.00, without interest, executed by the Allgoods, also dated November 14, 1927, secured by a second and inferior lien evidenced by a deed of trust on the same property, payable in monthly installments of $20.57, with interest on each installment at the rate of 10 per cent per annum after maturity, the first payable on December 14, 1927, and one on the 14th day of each and every consecutive month thereafter until and including the 14th day of November, 1930. It is stated in said deed of trust that said indebtedness represents a reimbursement to the payee and as compensation to the payee for services in connection with a loan of $3700.00. *2nd:* A brokerage commission of 5 per cent, amounting to $185.00 was charged and it is claimed by defendant in error that the lender retained out of this the sum of $129.50, as interest, which reverted to and was kept by it, not having been paid as such commission to one J. M. Hard who negotiated the transaction and who received only 1½ per cent of the loan, or $55.50, as his commission.

By deed dated July 9, 1928, Allgood and wife conveyed one of said lots to defendant in error, the consideration recited being $6000.00 paid and secured to be paid, as follows: $2075.00 in cash "and subject to one first and superior lien note in the principal sum of $3700.00 payable to the order of the National Bond and Mortgage Corporation in monthly in-

stallments of $39.07 per month and each installment being due and payable on the 14th of each month" and the execution and delivery "of one second and inferior lien note in the principal sum of $225.00 due and payable on or before ninety days after date with interest at the rate of 8 per cent from date until maturity and payable to the order of J. B. Allgood."

It was alleged and proven that Allgood made the payments as called for, for the months of December, 1927, to March, 1928, inclusive, which with the above alleged brokerage commission may be thus summarized:

Alleged brokerage commission charge............$185.00
Interest on Note No. 1 at the rate of $18.50
and installments on Note No. 2 at the rate of
$20.57, total $39.07, for 4 months................ 156.28

Total ..................................................$341.28

It was alleged and proven that at the time of her purchase, Miss Mahaney made the payments for April, May and June, 1928, at the rate of $39.07 each, total $117.21, and thereafter continued making such payments from July 19, 1928, up to and including September, 1929, or 15 months at the rate of $39.07 each, total $586.05.

For the payments due from October, 1929, to August, 1930, inclusive, being 11 months at the rate of $39.07 each, the company accepted the negotiable promissory note of E. K. Mahaney (father of Miss Mahaney), in the sum of $429.77, payable on or before September 15, 1930; this note was afterwards collected by the company out of the proceeds of a fire insurance policy—the house on the premises having been destroyed by fire on or about September 3, 1930.

The loss caused by the fire was adjusted and on or about October 18, 1930, the fire insurance company delivered a check payable to Miss Mahaney and the National Bond & Mortgage Corporation in the sum of $4200.00, which was endorsed by her and collected by the National Bond and Mortgage Corporation.

The total payments so made aggregate $1474.31.

The installments for September and October, 1930, became delinquent and the company exercised its option and declared the full amount of said notes immediately due and payable, retained the sum of $4129.77, out of the proceeds of said insurance policy and remitted to Miss Mahaney check for the sum of $70.23, balance remaining out of said sum of $4200.00

insurance collected. The item of $4129.77 comprised principal of the first note, $3700.00 and E. K. Mahaney's note, $429.77.

By instrument dated December 16, 1931, Allgood assigned his cause of action against the National Bond & Mortgage Corporation, to Etoile Mahaney, the said cause of action described as having arisen by reason of the company having demanded and collected a rate of interest in excess of 10 per cent per annum on said notes for $3700.00 and $740.00.

It was alleged that plaintiff and said Allgood had use of the money evidenced by Note 1, to-wit: $3700.00 for a period of two years, 10 months and 19 days, and that 10 per cent on that amount for such period amounts to only $968.89.

Prayer was for recovery of double the amount of interest on the money loaned, for interest, costs of suit and for such other and further relief, special and general, in law and in equity, that she may be justly entitled to.

The jury's findings on special issues submitted, were, (a) the item, $129.50 (out of the brokerage commission of $185.00 paid by Allgood at the time the loan was closed) was in fact interest, and was collected or received with the intention on the company's part to collect a rate of interest in excess of 10 per cent per annum, and was not received or applied to cover expenses in connection with the loan; (b) the second note for $740.00 was for interest and was obtained by the company with the intention to charge the borrower a rate of interest in excess of 10 per cent per annum, and was not a note to reimburse the payee for expenses in connection with the loan nor was it so intended by the company; (c) the interest was collected and received by the National Bond & Mortgage Corporation; (d) the company did not pay the expenses incurred in making the loan; (e) the money collected by the National Bond & Mortgage Company was not collected by it for and on behalf of the Century Trust Company to which this and other loans were afterwards assigned; (f) Miss Etoile Mahaney did not release the National Bond & Mortgage Company from any claim she may have had against it, when the settlement of the loan was made and that the payment to her of $70.23 was not in consideration of her releasing the company of her claim asserted in this case, and that said payment of $70.23 was a refund owing her out of the insurance company's check for $4200.00.

Judgment was rendered by the trial court based upon the jury's findings, and as recited therein, from the undisputed evidence, that the defendant exercised its option and right

provided for in the notes and deeds of trust held by it, to declare the full amount of the indebtedness evidenced by said notes immediately due and payable, by reason of the default having been made in the payment of certain installments; that when the plaintiff paid to the defendant on November 3, 1930, the sum of $4129.77 as demanded, the defendant then and there collected and received an amount of money which made the rate of interest to be in excess of 10 per cent per annum, although prior thereto the defendant had not collected interest at a rate in excess of the maximum provided by law.

The trial court then found, from the undisputed facts and the verdict of the jury, that the amount of interest paid by Allgood and the plaintiff and received and collected by the defendant was $1418.81 and rendered judgment for plaintiff in double that sum, viz: $2837.62, with legal interest from its date.

The Court of Civil Appeals concluded: the defendant in error was entitled to recover double the amount of all interest paid within two years prior to the filing of the suit, plus the amount of all interest paid more than two years prior thereto; also that Allgood and Miss Mahaney having paid $507.92 as interest during such two years, should recover the sum of $1015.84, plus $671.40 paid as interest prior to said two years period—this on the theory that the transaction being usurious, interest must be applied on principal.

The judgment of the trial court was accordingly reformed to allow recovery in the sum of $1687.24, with legal interest from December 29, 1932, date of judgment below.

## OPINION

*First.* Plaintiff in error contends that it was error to allow the recovery of $671.40 as an overpayment of principal, when this suit was one under the statute to recover the penalty for charging and collecting usury.

■ This contention is sustained. The action as shown by the above statement of plaintiff's petition was brought for the recovery of the penalty of double the amount of interest paid as authorized by Art. 5073, Rev. Stat., 1925. As said in Fires v. Kinney-Shotts Inv. Co., 59 S. W. (2d) 827 (Com. App). "An action under the statute for the penalty provided, rests upon on entirely different basis from one wherein a defense is urged against the enforcement of a usurious contract or wherein it is sought to cancel the interest imposed by such

a contract. The former is an action under a statute (Art. 5073, Rev. Stat., 1925) designed to inflict punishment upon one who has collected and received payment of usurious interest."

The cause of action here asserted, under the pleadings, is simply one to recover the statutory penalty and the right rests alone upon the statute. There was no claim or prayer for the amount of interest paid as usury, other than the prayer for recovery of double the amount of all interest paid, as usurious; recovery as to such penalty can be had, under the statute, only for the two years period immediately preceding the filing of the suit.

There was no pleading authorizing recovery of the item, $671.40. The pleading nowhere makes reference to a claim, if any, for usurious interest as contradistinguished from the statutory penalty, and of course no such relief may be granted if not set out and prayed for in the pleadings. Jennings v. Texas Farm Mortgage Company, 124 Texas, 593, 80 S. W. (2d), 931.

*Second.* Plaintiff in error contends that Miss Mahaney having purchased the property and assumed payment of the indebtedness thereon, she can not raise the question of usury as between herself and the mortgagee, for her liability arises out of the new contract of assumption, for which she has received a consideration in the value of the property received by her for her promise to pay.

■ The rule of decision is well established that usury can not be pleaded by a purchaser who assumes a usurious debt or obligation as part of the purchase price, based on the principle that when a party buys property, and in the purchase assumes to pay off and satisfy an existing lien thereon he becomes personally liable for the lien debt and can not dispute its validity. Cordell v. Lincoln Nat'l Life Ins. Co., 60 S. W. (2d), 474 and authorities there cited; writ of error refused.

While Miss Mahaney did not expressly assume payment, she acquired the property subject to the $3700.00 lien note payable in monthly installments of $39.07, and although the $740.00 note was not mentioned in the deed itself, the payment of $39.70 covered the monthly payments on the $740.00 note as well as on the $3700.00 note, and she took the property subject to the conditions and requirements as to interest as well as principal. Moore v. Temple Trust Co., 60 S. W. (2d) 828, writ of error refused. In effect, she to all practical

intents and purposes, assumed payment as a condition to her acquiring title, with the proviso, of course, that no execution could be levied on her other property to satisfy this obligation, as would be the case if she had expressly assumed its payment. Wooten v. First Bank of Swenson, 281 S. W., 196 (Com. App.); Rice-Stix Dry Goods Co. v. First Nat'l Bank, 231 S. W., 386 (Com. App.).

Therefore, as purchaser of the property, she could not set up claim for usury. But, as to Allgood, we think her payment was a payment for him and inured to his benefit. In selling the property, the claim against it must have been taken into consideration and to that extent, suffered by Allgood; when paid, he, then could claim usury, and his cause of action then accrued. It is purely statutory, is an action for debt, and as such is assignable. So while Miss Mahaney as purchaser of the property could not set up claim for usury, Allgood could do so, and having assigned the claim to Miss Mahaney, she, as such assignee, stood in his place and could recover.

In Rosetti v. Lozano, 96 Texas, 57, 70 S. W., 204, the court held that the right to recover the statutory penalty is a cause of action which must be affirmatively asserted and not merely by a purely defensive pleading setting up usury and payment—it is a cause of action and not a mere defense.

In Lasater v. First National Bank, 96 Texas, 345; 72 S. W., 1057; J. L. Lasater and one Maggard were partners in cattle raising and borrowed $4000.00 from the bank, executing their joint note with A. M. Lasater, for $4350.00 with 10 per cent interest after maturity; certain payments were made, after which Maggard sold all his interest in the firm to J. L. Lasater, the latter assuming all the liabilities, after which J. L. Lasater, with A. M. Lasater renewed the note for $4313.50, with interest at 10 per cent after maturity. Later on, A. M. Lasater, the surety, bought all the mortgaged cattle of J. L. Lasater and some others, and agreed to assume and pay off note in full consideration of said sale, and executed his note to the bank taking up the J. L. Lasater note. This occurred in October, 1900. In June, 1901, A. M. Lasater paid to the bank the sum of $4457.00 in full of said note. A. M. Lasater was a party to the original and all renewal notes made to the bank, he being as to the bank a principal thereon, but as between himself and the other signers a surety only on all but the last note, which was his obligation alone.

In November, 1900, J. L. Lasater filed his petition in bank-

ruptcy in the District Court of the United States for the Northern District of Texas and was discharged of all his debts in January, 1901. A trustee was appointed, and afterwards discharged of his trust, in June, 1901. The bankrupt returned no assets to the trustee, said he had none unless the claim for usury was one and that he did not tell the trustee or his creditors about the claim for usury.

Upon the foregoing facts, the Court of Civil Appeals for the Second District, certified questions to the Supreme Court: (a) Was J. L. Lasater's discharge in bankruptcy a bar to his recovery? (b) Was J. L. Lasater entitled to recover from the bank, the penalty denounced by statute—in other words, was he entitled, either as an assignee or as surviving partner, to recover the penalty sued for as to usurious interest paid during the continuance of the partnership? (c) Was J. L. Lasater, by reason of his having assumed payment of the debt due the bank when he purchased the interest of the retiring partner Maggard, precluded from recovering or limited in his recovery to one-half the sum he would otherwise be entitled to? (d) Is the payment made by A. M. Lasater to be regarded as a payment by J. L. Lasaster?

The answer by Mr. Justice Williams, was: (a) Such a cause of action as there asserted will upon bankruptcy by the owner, pass to the trustee in bankruptcy, and while the authorities cited by the Court of Civil Appeals sustain the proposition that after the close of the administration of the bankrupt's estate and the discharge of the trustee, unadministered assets may be recovered by the bankrupt, the decisions of the Supreme Court of the United States make somewhat doubtful the application of this principle to cases where the trustee had no knowledge of the existence of the asset, and where the suit is brought so recently after the close of the bankruptcy proceeding that it may be reopened and further administration had, but when neither the creditor nor the trustee asserts right to the unadministered asset, it may be regarded, at least as against a wrongdoer, as belonging to the bankrupt. This may often be found to be necessary to prevent destruction of the property right. (b) The statute which gives the action to the person paying the usury, or his legal representative, evinces the intent that it is not to be regarded as strictly a personal right, and, hence, it may be assigned. (c) The assumption by J. L. Lasater of the debts of the partnership, did not change the relation of either partner to the bank; as between himself and his re-

tiring co-partner he became primarily liable but only to the extent that the firm was liable—it was not an agreement on his part to pay for Maggard, usurious interest, and hence it can not be held that as part of the consideration for Maggard's interest in the assets he agreed to pay the debt, usury and all. (d) The payment made by A. M. Lasater of the usurious interest which the contract bound plaintiff (J. L. Lasater) to pay and the payment of which he procured by the conveyance of property, is to be treated as a payment by him.

The Court of Civil Appeals rendered judgment for double the amount of usurious interest paid and not barred by limitation. Lasater v. First National Bank, 72 S. W., 1054.

The case reached the Supreme Court of the United States on writ of error to the Court of Civil Appeals, and it was there held that the mere discharge by A. M. Lasaster of the note executed by himself and J. L. Lasater by giving his own note in renewal thereof, would not uphold a recovery from the bank on account of usurious interest in the former note, because the payment contemplated by the statute is an actual payment and not a further promise to pay, and was not made until the bank, in June, 1901, received the money. First National Bank v. Lasater, 196 U. S., 115, 49 L. Ed., 408, 25 Sup. Ct., 206. The court did not pass upon the question, whether J. L. Lasater could avail himself of the final payment made by A. M. Lasater (though reference is made to the holding of the Court of Civil Appeals that he could), but finds that if the claim is one that could be sold and bought like any other chose in action, it passed to the trustee in bankruptcy, and did not return to the bankrupt, because all knowledge thereof was withheld from the trustee—it was something to which the creditors were entitled, and the bankrupt, could not, by withholding knowledge of its existence obtain a release of his debts and still assert title to the property.

On remand to the Court of Civil Appeals (40 Texas Civ. App., 237, 88 S. W., 429), that court held that if J. L. Lasater ever paid usurious interest to the bank it was on October 17, 1900, when A. M. Lasater took up the original note by substituting his own, and the debt on the original note was discharged at that time; he never afterwards owed the bank anything and the bank never took, received, reserved or charged any interest whatever so far as he is concerned. This

554

holding is in accord with that in Mann v. Bank of Elkton, 104 Ky., 852, 48 S. W., 413.

Said the Court "When A. M. Lasater, in June, 1901, paid the bank the sum of $4457.00 he paid his own debt and not appellant's. Then, if the transaction of October 17th, whereby appellant's indebtedness to the bank was discharged and he was released, would not uphold a·recovery from the bank, it is clear to our minds that irrespective of the question of fraud upon his part in withholding from his trustee in bankruptcy notice of the existence of this claim, upon which the cause was decided in the United States Supreme Court, appellant has no case."

It will be noted that the right to assign is not questioned and the claim was treated in the nature of a chose in action. The Court of Civil Appeals clings to the proposition that so far as J. L. Lasater was concerned, the debt was paid when the bank accepted A. M. Lasater's note of October, 1900, although the Supreme Court of the United States decided that the payment contemplated by statute is an actual payment and was not made until the bank, in June, 1901, received the money. The difference between the two courts was not the right to recover but when that right accrued. See also, Fidelity Trust & Safety Fault Co. v. Ryan, 109 Ky., 240, 58 S. W., 610; Turner v. Building & Loan Ass'n., 47 S. C., 397, 25 S. E., 278.

*Third.* Plaintiff in error insists that the charges, claimed to be usurious, were a reimbursement for expenses and for services incurred by it and not compensation for use of money loaned.

■ The plan devised by the plaintiff in error in the management of its business contemplated the issuance of bonds to obtain money for itself, secured by the first lien notes of various parties who had previously borrowed money from it. The money obtained from the sale of these bonds, became the money of the plaintiff in error and the expenses incident to the sale thereof were not expenses incident to the loan made by it to Allgood, but were expenses incurred in its own behalf in obtaining a loan for itself.

The particular bond issue secured by the Allgood and other loans approximated more than a million dollars and the expenses were prorated to each individual whose mortgage was so pledged, according to the amount of his mortgage. The assistant secretary and treasurer of the company, also one

of its directors, testified that for the $740.00 note, Allgood did not receive any money.

The company figured such pro rata, chargeable to Allgood, as follows:

"Cost of selling $3,700.00 of the bonds of the National Bond & Mortgage Corporation to obtain the money for this loan, being 6% of $3,700.00_____$222.00

"Part of bond-holders' income tax and ad valorem tax on $3,700.00 of bonds, being $22.94 per year for four years _____$91.76

"Cost of having Maryland Casualty Company guarantee to Century Trust Company and Henry M. Laithe, trustee, the Allgood mortgage, being $18.50 per year for four years _____$74.00

"Fees paid to Century Trust Company and Henry M. Laithe for their services as trustees under the 'Indenture of Trust' executed by National Bond & Mortgage Corporation, being $18.50 per year for four years_____$74.00

"Total expenses _____$461.76."

The sum of $185.00 to apply on the above expenses was deducted at the time the loan was consummated.

It will be noted that the sales expense of $222.00 was a part of that incurred by the company in selling its own bonds, and the item $22.94 per year for a period of four years, was to refund the purchasers of such bonds for any taxes (income or otherwise) they became liable for, although Allgood and Miss Mahaney had the use of the money for less than three years from November 14, 1927, to November 3, 1930. Likewise, the cost of having the Maryland Casualty Company guarantee to the Century Trust Company, which acquired the bonds, and to Henry M. Laithe, trustee, the Allgood mortgage, and the fees of the Century Trust Company and Henry M. Laithe, for acting as trustees were charged for four years.

As said in Mitchell v. Napier, 22 Texas, 120, "It is quite immaterial, in what manner or form, or under what pretense it is claimed, if the intention was to reserve a greater rate of interest, than the law allows for the use of money, it will vitiate the contract with the taint of usury. Whether the transaction was so intended, where upon its face it does not appear to be usurious, is a question of intention for the decision of the jury."

In McDaniel v. Orr, 30 S. W. (2d), 489 (Com. App.), McDaniel borrowed from Orr the sum of $2000.00 which he

repaid with $306.00 additional, about five months thereafter. McDaniel claimed that this $306.00 was paid by him and received by Orr as interest; Orr claimed that while $56.00 of this sum was paid and received by him as interest, the remainder of the $306.00 was paid by McDaniel and received by him, for services rendered to McDaniel. The issue was submitted to a jury.

It thus became a question of fact. Presiding Judge Short said "the ultimate fact to be determined by the verdict of the jury, under the conflicting testimony, was the intention of the parties as reflected by their conduct," citing Rosetti v. Lozano, 96 Texas, 57, 70 S. W., 204; and Yonack v. Emery, 13 S. W. (2d) 667, Com. App.

So here, the issue of fact was submitted to the jury, and resolved adversely to the company.

*Fourth:* It follows therefore that the recovery herein should be for only the sum of $1015.84 (double the interest paid within two years prior to the filing of the suit) and should not include the sum of $671.40 (paid as interest prior to said two years period); the judgments below are modified accordingly, and as so modified, are affirmed.

Opinion adopted by Supreme Court March 27, 1935.