**TRAVELERS INS. CO. v. STILES et al.**

No. 13611.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 5, 1937.

Rehearing Denied Dec. 10, 1937.

Renfro & Kilgore, of Dallas, for appellant.

B. F. Edwards, of Clarksville, Austin S. Dodd, of Dallas, and Wm. Hodges, of Texarkana, for appellees.

DUNKLIN, Chief Justice.

On August 18, 1921, J. M. Stiles and C. D. Stiles borrowed from the Texas Farm Mortgage Company $8,500, for which loan they executed their promissory note of that date, payable to the order of the lender on November 1, 1931, with interest from date at the rate of 6½ per cent., payable annually, evidenced by coupon notes attached to the principal note. At the same time they executed a second interest note for the principal sum of $1,734.50, payable in equal installments of $346.90, the first installment being payable on the first day of November, 1921, and the same amount on the first day of November of each succeeding year until fully paid, with interest at the rate of 10 per cent. per annum on each installment after its maturity.

Both of those notes were secured by deeds of trust of the same date of the notes on 901 acres of land situated in Red River county, Tex. Both of the notes and the deeds of trust were duly executed by J. M. Stiles and his wife, Mary Rebecca Stiles, and C. D. Stiles and his wife, Loula Stiles. In both of the deeds of trust Leslie Waggoner, of the city of Dallas, was named as trustee.

The deed of trust given for the principal note of $8,500, which will hereinafter be designated as the first deed of trust, contained the stipulation that if default be made in the payment of the principal or interest, or any part thereof, when due, then the holder of the notes should have the option to mature the whole of the indebtedness evidenced by said notes, and the trustee, upon request of any holder of said note or notes, should have authority to take possession of the property and sell the same to the highest bidder at public outcry at the courthouse door of Red River county after due advertisement of such sale as specified in the deed of trust, and to apply the proceeds of said sale (1) to the cost of executing the trust, including a commission to the trustee and 10 per cent. attorney's fee in the event of litigation; (2) "to the payment of the debt due said party of the third part, its successors or assigns, and the remainder, if any there be, shall be paid to the said party of the first part."

The deed of trust given to secure the payment of the additional interest note in the sum of $1,734.50, hereinafter designated as the second deed of trust, was made subordinate to the first deed of trust and stipulated that if default should be made in the payment of any of the installments of the $1,734.50 note, or if any of the covenants or agreements contained in the first deed of trust should be breached, then all of the installments of the $1,734.50 note should become due and payable at the election of the holders thereof and the trustee should, upon request of such holders, sell the real estate covered by the deed of trust in accordance with the powers given in the first deed of trust, which were expressly made a part of the second deed of trust.

The proceeds of such sale were to be applied by the trustee: (1) To the expenses of making the sale, including the trustee's commission; (2) to the payment of the amount due on the $1,734.50 note; (3) to the payment of any delinquent principal or interest or taxes or attorney's fees or other sums due under the first deed of trust, according to the terms thereof; the balance to be paid to the grantors or their heirs or assigns.

On September 12, 1921, which was less than one month subsequent to the date of the principal note in the sum of $8,500, the Texas Farm Mortgage Company, by an instrument in writing, bargained, sold, and conveyed that note, together with the lien created by the first deed of trust, to the Travelers Insurance Company, a corporation organized in the state of Connecticut with its principal offices in the city of Hartford. The consideration recited in that assignment was the payment by the assignee of the interest then accrued on the note.

At the time of the execution of the two deeds of trust, the land described therein belonged to a partnership composed of C. D. and J. M. Stiles, and on February 8, 1928, the two partners executed a written instrument by the terms of which that property, together with other lands, was conveyed to Martin Stiles as trustee, and in which it was recited that there was then outstanding against said property an indebtedness of $8,500 held by the Texas Farm Mortgage Company, due and payable on the 1st day of November, 1931, followed by these provisions: "And, whereas, we, the said C. D. Stiles and J. M. Stiles are desirous of preserving and keeping intact the above described property so that all indebtedness existing against the same might be extinguished, if possible, and the property be turned over under our testamentary declarations at the expiration of this trust in the most practicable manner possible"; followed by provisions prescribing the duties of the trustee, including the collection of rents and all other revenues arising from the property and application of the annual income, first to the expenses of operating the trust, including taxes, insurance, and repairs, and the balance to be set apart as a fund out of which should be paid any interest due on the mortgage lien on the land; also a sinking fund out of which to retire the said mortgage indebtedness when the same became due and with power to invest the same in the meantime in cattle, horses, mules, sheep, and goats, at his discretion, and to make distribution of the net revenues according to the testamentary declarations of C. D. and J. M. Stiles.

There were further provisions that the trust so created would be revocable at any time by the joint consent of the grantors; but should continue for five years after the death of either leaving the other surviving, unless the indebtedness against the property is sooner extinguished with revenues derived therefrom.

Ten days after the execution of that trust deed, J. M. Stiles executed a will, of date February 18, 1928, which contained, among others, these provisions:

"Second: I direct that all my just debts shall be paid as soon after my death as is practicable.

"Third: I do hereby will and bequeath to my beloved wife Mary Rebecca Stiles all of the property which I may die seized and possessed of, whether the same be personal, real or mixed, subject however to the following trust agreement made and entered into by and between myself and C. D. Stiles on the 8th day of February A. D. 1928, which is as follows." (Here follows a full copy of the trust deed made to Martin Stiles and mentioned above.)

C. D. Stiles also executed a will, dated March 26, 1928, which included these provisions:

"Second: I direct that all my just debts shall be paid as soon after my death as practicable.

"Third: I direct and request that my estate be divided under the laws of descent and distribution of the State of Texas, subject however to the following trust agreement made and entered into by and between myself and J. M. Stiles on the 8th day of February A. D. 1928, which is as follows." (Here follows a full copy of the trust deed made to Martin Stiles and mentioned above.)

C. D. Stiles died January 19, 1932, and his will was duly probated.

On January 26, 1933, J. M. Stiles executed to the Travelers Insurance Company, the holder of the principal note mentioned above, a chattel mortgage on certain crops growing and to be grown during the year 1933 on 125 acres of land covered by the two deeds of trust, in consideration of the extension by the holder of the maturity date of $552.50 interest accruing on said note, and due on November 1, 1932; said chattel mortgage to be held as additional security for said loan.

Thereafter, and on March 21, 1933, J. M. Stiles died and his will was also duly probated.

The second interest note for $1,734.50 was kept by the Texas Farm Mortgage Company, its payee, and was fully paid; the last installment being paid on November 1, 1925, which was more than two years prior to the execution of the trust deed. No payment has ever been applied on the principal of the note sued on here for $8,500, but all the coupon interest notes attached thereto were paid as they fell due.

This suit was instituted by the Travelers Insurance Company to recover the principal which matured according to its terms on August 18, 1931, with interest thereon as follows: November 1, 1932, $513.23; November 1, 1933, $552.50.

The petition included allegations of execution of the note and deed of trust securing it; assignment of same to plaintiff

by the Texas Farm Mortgage Company; execution by C. D. and J. M. Stiles of the trust deed to Martin Stiles, trustee; execution of the chattel mortgage by J. M. Stiles; deaths of C. D. and J. M. Stiles; death of Mrs. Loula Stiles; and appointment of Jessie Stiles, defendant, as administratrix of her estate; and prayer was for personal judgment against the estates of C. D. and J. M. Stiles for principal and interest on the note, with foreclosure of the mortgage lien against all defendants.

Following were named as defendants, with allegation that each and all of them are claiming some interest in the property covered by the mortgage, the exact nature of which is unknown to the plaintiff:

"Mary Rebecca Stiles, individually and as independent executrix of the estate of J. M. Stiles, deceased;

Martin Stiles, individually and as trustee under a deed of trust executed by C. D. Stiles and J. M. Stiles, and as independent executor of the estate of C. D. Stiles, deceased;

Ruth Williams and Jessie Stiles, all of Red River County, Texas. Erna Carney and husband, G. R. Carney, of Ashflat, Arkansas. Robert Stiles, individually and as independent executor of the estate of C. D. Stiles, deceased, of McCurtain County, Oklahoma.

Isabel Stiles of Wichita County, Texas; Juanita Bowling and husband B. E. Bowling of Fannin County, Texas.

Franklin E. Wolfe, Receiver of the Lloyd Oil Corporation of Texas, of Tarrant County, Texas.

E. T. Tolison of Red River County, Texas. Pauline Corrine Hill and husband F. E. Hill of Wichita County, Texas."

All of the defendants answered in the respective capacities alleged in the petition, and there is no showing in the entire record that there was a lack of necessary parties interested in the title to the property covered by the mortgage.

Defendants pleaded the execution of the second interest note for the sum of $1,734.50 and the second mortgage to secure the same contemporaneously with the note and mortgage sued on by the plaintiff and as a part of the same transaction; the vice of usury in the transaction, in that the interest charged for the loan of $8,500 in question was in excess of 10 per cent. per annum; the payment in full of said second

interest note at maturity; also payment of interest coupons attached to the principal note for $8,500, with prayer that all such payments be credited on said principal note and the plaintiff's recovery be limited to the balance remaining The answer was duly verified.

Judgment was rendered for plaintiff for the balance due on said principal note after allowing as credits thereon amounts paid as interest plus 10 per cent. attorney's fees and plus taxes paid by plaintiff on the property, with foreclosure of the mortgage lien; thus sustaining the plea of usury urged by the defendants.

In the back of appellant's briefs are four assignments of error, reading as follows:

"1. The trial court erred in overruling the appellant's motion for instructed verdict for the reason that the appellant has made out a prima facie case for recovery of full amount, principal, interest and attorney's fees and has shown that J. M. Stiles and C. D. Stiles had waived usury and that the appellees were estopped to claim usury as a defense.

"2. The trial court erred in directing a verdict in favor of the appellees for the same reasons set out in the first assignment of error.

"3. The trial court erred in rendering judgment in favor of the plaintiff for any amount less than the full amount of its principal, interest, attorney's fees and tax advancement for the reason heretofore set out.

"4. The trial court erred in limiting the amount which was a charge against the land in controversy or any amount less than principal, interest, attorney's fees and tax advancement as set out in plaintiff's petition for the reason hereinbefore set out."

The only propositions submitted in the brief read:

"1. Usury is a personal defense which may be waived and the action of J. M. Stiles and C. D. Stiles in executing the trust agreement to Martin Stiles and incorporating it as a provision in their respective wills and the action of J. M. Stiles in executing a chattel mortgage covering interest inclusive shows the intention to waive any claim of usury by the makers of the note so that the defendants who claim title under said makers cannot urge usury as a defense to this cause.

"The title of the defendants Martin Stiles and the other appellees to the property in controversy depends upon the trust agreement executed by J. M. Stiles and C. D. Stiles and upon the respective wills of J. M. Stiles and C. D. Stiles. These title documents expressly recognize the validity of plaintiff's debt both as to principal and interest; they direct that it be paid, and they make the defendants' title subject to the payment. Consequently, the defendants are estopped to allege usury as a defense to the plaintiff's cause of action."

Article 1757, Rev.Civ.Statutes, as amended by the 42nd Legislature (Vernon's Ann. Civ.St. art. 1757), reads:

"In all cases appealed to the Court of Civil Appeals and/or taken to the Supreme Court, it shall be sufficient if said briefs contain the following:

"1. A statement as to the nature and result of the suit.

"2. The alleged error or errors upon which the appeal is predicated.

"3. The authorities relied upon.

"4. A statement and/or argument on the errors assigned. Provided, however, that the Supreme Court may adopt rules with reference to the form and time of filing of briefs generally, but not inconsistent with the provisions hereof."

By virtue of that statute it is no longer necessary for an assignment of error to be followed by a proposition in appellant's briefs, as prescribed by rule 30 for Courts of Civil Appeals. But that article does not prescribe the necessary requisites of an assignment of error as expressed in article 1844, as amended during the same session of the Legislature (Vernon's Ann.Civ.St. art. 1844), reading: "The appellant or plaintiff in error need not file assignments of error with the Clerk of the Court below but he may embody in his brief in the appellate court all assignments of error distinctly specifying the grounds on which he relies. All errors not distinctly specified are waived, but an assignment shall be sufficient which directs the attention of the Court to the error complained of. The appellee or defendant in error need not file his cross-assignments of error with the Clerk of the Court below but may embody them in his brief filed in the appellate court."

The latter statute is in substantial accord with rules Nos. 24 and 25 theretofore and still in effect, and applicable in the Courts of Civil Appeals, except as qualified by the provision, "but an assignment shall be sufficient which directs the attention of the Court to the error complained of."

But while it is not now necessary to follow an assignment of error with a separate proposition, still, in the absence of fundamental error, the assignment, not otherwise appearing, must be brought forward from the back of the brief and presented as a proposition of law of itself and followed by such argument or discussion as is desired, with a reference to the authorities relied on and a clear accurate statement of the record bearing upon the assignment as required by rule 31. Western Casualty Co. v. Lapco (Tex.Civ.App.) 108 S.W. 2d 740 (writ dismissed), opinion by Justice Brown, and decisions referred to, which is in accord with the opinion of the Commission of Appeals in Lamar-Delta County Levee Imp. Dist. No. 2 v. Dunn, 61 S.W.2d 816.

Numerous decisions might be cited holding that failure of the complainant to comply with such requirements is fatal to the proposition urged either as an assignment of error of itself, or as a proposition in aid of an assignment; such as Terry v. Williamson (Tex.Civ.App.) 251 S.W. 813; Chicago, R. I. & G. Ry. Co. v. Vesera (Tex. Civ.App.) 237 S.W. 349; Lancaster v. Crosby (Tex.Civ.App.) 263 S.W. 646; Brigman v. Holt & Bowers (Tex.Civ.App.) 32 S.W. 2d 220 (writ refused).

Aside from the question of sufficiency of the assignments to present the issues of waiver and estoppel for the reasons embodied in the two propositions and statements thereunder (a question we will not undertake to determine and do not determine, in view of conclusions hereafter shown), it cannot be said that the court erred in refusing to hold that defendants' right to urge the defense of usury was waived, or that they were estopped to urged it by reason of their claim of title burdened with the provisions of the trust deed executed to Martin Stiles, trustee.

The execution of that instrument was no more a waiver of the right of the makers to plead usury than was the execution of the note and deed of trust in the first instance.

Article 5071, Vernon's Tex.Civil Statutes, reads: "The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the contract; and all written contracts whatsoever, which

may in any way, directly or indirectly, provide for a greater rate of interest shall be void and of no effect for the amount or value of the interest only; but the principal sum of money or value of the contract may be received and recovered."

Article 5073, Rev.Civ.Statutes, gives the right to persons who have paid usurious interest or their legal representatives to recover double the amount so paid, by suit instituted within two years after such payment.

Article 3314, Rev.Civ.Statutes, provides that upon the death of a testator the property devised by him shall vest in the devisees or legatees, subject to payment of debts of the testator, except such as may be exempted by law.

■ Since a contract to pay more than 10 per cent. interest is denounced by article 5071 as void, it has been a uniform rule of decisions in this state to credit voluntary payments of usurious interest on the principal of the note and render judgment for the balance only. 42 Tex.Jur., § 55, p. 949; Cain v. Bonner, 108 Tex. 399, 194 S.W. 1098, 3 A.L.R. 874; El Paso Bldg. & Loan Ass'n v. Lane, 81 Tex. 369, 17 S.W. 77; International Bldg. & Loan Ass'n v. Biering, 86 Tex. 476, 25 S.W. 622, 26 S.W. 39; Cotton v. Cooper (Tex.Com.App.) 209 S.W. 135.

■ We believe it clear that the right of the testators to have such application of usurious interest paid to the principal of the note in suit passed to their devisees and privies in estate, and that they could not be estopped to assert that valid right because of their claim of title through C. D. and J. M. Stiles. 42 Tex.Jur., § 54, p. 948; Dallas Trust & Savings Bank v. Brashear (Tex.Com.App.) 65 S.W.2d 288.

The rule invoked by appellant and announced in such authorities as Doty v. Barnard, 92 Tex. 104, 47 S.W. 712; Rice-Stix Dry Goods Co. v. First National Bank (Tex. Com.App.) 231 S.W. 386; National Bond & Mortgage Corp v. Mahanay, 124 Tex. 544, 80 S.W.2d 947, that one who purchases property subject to a known lien thereon cannot avoid that burden, has no proper application here, because the lien attempted to be given for usurious interest was void and constituted no incumbrance at all. Nor did any of the defendants assume the agreement of the trustee, as agent for the grantors, to pay those debts, Their interests were not derived through any deed from the trustee.

Accordingly, we conclude that the assignment presenting the issue of waiver and estoppel, even if considered as properly presented, is without merit.

■ For the reasons noted above, the assignment of error appearing in the back of appellant's briefs to the court's refusal to render judgment for the full amount sued for, to wit, the principal of the note in the sum of $8,500, with interest accruing thereon after its maturity, but not brought forward in its briefs and presented as an assignment of error, and followed by the statements from the record as required by rule 31, can be considered only as an assignment of fundamental error, if it be sufficient for that purpose.

Article 1837, Rev.Civ.Statutes, reads:

"A trial in a Court of Civil Appeals shall be: * * *

"7. Or upon an error in law either assigned or apparent upon the face of the record.

"If none of the foregoing exists, the case shall be dismissed with costs alone or with costs and damages, in the discretion of the court."

In Blackmon v. Trail (Tex.Com.App.) 12 S.W.2d 967, 968, this is said: "The jurisdiction of our appellate courts is statutory (or constitutional), and they can exercise no power that is not conferred upon them by law. There is no statute giving to any of our appellate courts a general revisory power over the trial courts. Their authority to reverse judgments is limited to errors duly assigned or apparent upon the face of the record, commonly called fundamental error. In the absence of an assignment of error and in the absence of error apparent of record, the Court of Civil Appeals has no authority to reverse the judgment of a trial court."

In 3 Tex.Jur., § 574, p. 815, and numerous decisions there cited, the rule is announced that the statement of facts is not a part of the record which will be examined to discover alleged fundamental error.

In Clement v. First National Bank, 115 Tex. 342, 282 S.W. 558, 560, after reviewing many former decisions as to what constitutes fundamental error, this is said: "Plain or fundamental error, which is designated in the statute as 'an error of law apparent upon the face of the record,' perhaps has been sufficiently defined and discussed in the authorities cited above. The 'record' would at least include the pleadings, the verdict, and the judgment. That the

error here disclosed is such an error is clear."

The plea of usury includes allegations of the execution of the principal note with interest coupons attached; the additional interest note for $1,734.50, payable in equal annual installments, the last maturing five years from the date of the loan; the principal of the loan and all interest accruing thereon to draw interest from maturity at the rate of 10 per cent. per annum; execution of the two deeds of trust, noted above, to secure both notes; option given the holder of any of those notes to mature all those outstanding upon default of payment of any, and to have the property then sold by the trustee and proceeds applied to payment of any balance then unpaid on all the notes; the execution of all those instruments at the same time and as parts and parcels of the same transaction; with further allegations that the loan was usurious because the interest so charged amounted to 10½ per cent. for the first five years after the date of the loan which could have been collected under provisions for acceleration of maturity of the loan in event of default in payment of any interest installment made payable during that five-year period.

The judgment of the court sustaining the defense of usury manifestly was based on those allegations in the plea of usury. In appellant's briefs, in discussing the assignments of waiver and estoppel, it is admitted that the interest stipulated in the principal note plus that covered by the separate interest note for $1,734.50 did aggregate 10½ per cent. per annum for the first five years covered by the principal note, as alleged in defendants' plea of usury; but with the further insistence that, since the total interest charged for the full term of ten years the principal note was to run aggregated only 8½ per cent. per annum, the defense of usury was not sustained.

■ In order to determine the merits of those conflicting views, it is not necessary to examine the statement of facts for evidence adduced, and therefore the assignment last referred to, complaining of the judgment sustaining the defense of usury, must be considered as presenting fundamental error, apparent upon the face of the record.

The inquiry is then narrowed to the question whether or not the total interest charged should be spread over the entire ten-year period covered by the principal note and amounting to 8½ per cent. per

annum for that time, and thus avoid the vice of usury in the loan made for $8,500.

We have reached the conclusion that the inquiry should be answered in the negative.

■ Whether the contract stipulated for usurious interest must be determined as of its date. 42 Tex.Jur. § 13, p. 572.

These announcements by the Supreme Court in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.2d 282, 285, 39 S.W.2d 11, 84 A.L.R.1269, have been followed in many subsequent decisions of the same court:

"A clear statement of the law which governs our decision is made in 27 Ruling Case Law, at § 24, on pages 223 and 224, in these words:

"'To constitute usury, it is of course essential that an excess of the legal maximum be exacted in consideration of the loan or forbearance. By this is meant an excess of the maximum prescribed by statute. Though there is authority to the contrary, it does not seem requisite that an excess be payable in any event. On the contrary a contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts. Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, by the terms of the transaction, and the means used to effect the loan, he may by its enforcement be enabled to get more than the legal rate.'"

And on motion for rehearing in that case the court said:

"The contract derives no validity from the fact that payment of the promised compensation, which exceeded the highest allowable conventional interest, was contingent on the creditor's election to demand such excessive compensation. The fact that the contract stipulates for more interest than the law allows on a contingency involving no risk of principal and lawful interest condemns the contract. Once you treat the acceleration clause as obligating the debtors to pay more than permissible conventional interest, instead of stipulating for a penalty, the invalidity of the contract is inevitable. This results from the rule.

declared by the New York Court of Appeals in words as follows:

" 'If the contract provide for the payment of the loan with interest, at all events, it is enough to'render it usurious, if in addition to the legal interest, it provide for the payment of excessive'interest, upon a contingency. A stipulation even for a chance of advantage beyond legal interest, is illegal.' Leavitt v. De Launy, 4 N.Y. [363] 369."

Also the following on page 417 of 120 Tex., 30 S.W.2d 282, 39 S.W.2d 11, 14, 84 A.L.R. 1269, which refutes the contention that the aggregate of interest charges should be spread over the entire ten year period: "The final contention of the motion for rehearing is that, though the contract exacts usury, yet no greater interest than 10 per cent. per annum has been paid by the debtors or received by the creditor. The contention rests on the premise that the term of the loan was ten years. The premise falls under the operation of the stipulation in the contract that the debtor's failure to pay any of certain interest installments should entitle the creditor to collect the principal sum loaned with usury. The necessary result of the successful maintenance of this suit to adjudge the contract usurious was nonpayment of any future interest. By the stipulations of the contract, the term of the loan, at the creditor's option, does not extend beyond the date of default in discharging any installment of interest. For the reduced term, which must now be looked to in determining the question of how much interest was promised or paid, the debtors promised and actually paid interest at a rate greater than 10 per cent. per annum. Under the stipulations of the contract, the creditor was entitled to retain money paid as interest for two years at the rate of 12 per cent. per annum. Under those stipulations, the creditor was further entitled to the principal sum loaned and additional interest at a rate in excess of 12 per cent. per annum. Under such circumstances, the creditor has surely collected, and the debtor has actually paid, greater interest than 10 per cent. per annum, and the creditor became liable for the statutory penalty, for which judgment was entered in this court."

The facts involved in Dallas Trust & Savings Bank v. Brashear (Tex.Com.App.), 65 S.W.2d 288, were so similar to the facts of this case that the conclusions reached in that case are pertinently applicable here, and support the finding of usury in the case at bar. In support of the conclusion reach-ed that the contract was usurious, the court cited Parks v. Lubbock, 92 Tex. 635, 51 S. W. 322; Shropshire v. Farm Credit Co., 120 Tex. 400, 30 S.W.2d 282, 39 S.W.2d 11, 84 A.L.R. 1269; Deming Inv. Co. v. Giddens, 120 Tex. 9, 30 S.W.2d 287, 289; Bothwell v. Farmers' & Merchants' State Bank, 120 Tex. 1, 30 S.W.2d 289, 76 A.L.R. 1480.

In Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.2d 942, 946, a contract in like terms to the one involved in this suit was held to provide for payment of usurious interest; citing and following the opinion of Justice Smedley of the Commission of Appeals in Dallas Trust & Savings Bank v. Brashear, supra, and saying in part:

"In that case the contracts were found to be practically identical with those in the Shropshire Case, and for that reason were held usurious. * * *

"In so holding, Judge Ryan said:

" 'Brashear did pay to, and said bank collected, a sum greater than the original debt would produce at 10 per cent. per annum for the use of the money during the time that payment represented, and the bank became liable for the statutory penalty.' "

See, also, Temple Trust Co. v. Stobaugh, 59 S.W.2d 916, by Court of Civil Appeals (writ of error dismissed).

Accordingly, the assignment of error last discussed is overruled.

The judgment of the trial court is in all things affirmed.

### On Motion for Rehearing.

The trust deed executed by J. M. Stiles and C. D. Stiles to Martin Stiles was, in legal effect, a power of attorney only. By its terms Martin Stiles was appointed the agent of the grantors, with powers specifically fixed to take charge of and rent out said land and apply the proceeds arising therefrom, first, to payment of expenses incurred by the trustee and a commission of 5 per cent. to him for his services; and the balance remaining as credits, first, on the interest, and then on the principal of the mortgage indebtedness; but with the following specific limitation of his powers: "If the property remains intact or any part thereof remains .intact until the death of each survivor, the said trustee, in that event is to have full possession and control over the said above described property, or the part thereof remaining but shall not have the power of alienation in any manner whatsoever of the real estate above men-

tioned, save and except the power and authority to execute renewal mortgages for the indebtedness already existing and which is secured by a lien or liens on any of the above described property or to execute mortgage or mortgages upon said above described property with which to extend or extinguish any pre-existing debt secured by a lien on the hereinbefore described lands and premises."

The trustee never attempted to extend the outstanding mortgage liens held by plaintiff who sued to foreclose the original.

The five-year period stipulated for continuation of the powers therein given to the trustee will expire on March 21, 1938. The only basis for any possible claim by him for such continuation would be the right to earn the commissions during that period. He filed an answer in the suit "individually and as trustee under a certain deed of trust executed by C. D. Stiles and J. M. Stiles and as independent executor of the estate of C. D. Stiles, deceased." Manifestly, the judgment of foreclosure terminated and extinguished that option, and he has made no complaint of it here.

We are unable to perceive how it can be said that the trust deed created an additional lien on the land to secure the note sued on, and that the title acquired by appellees from J. M. and C. D. Stiles was burdened therewith and operated as an estoppel to assert the defense of usury on the note in suit.

Appellant's motion for rehearing is overruled.