**BOYETT et al. v. RUTLAND SAV. BANK.**

**No. 12347.**

Court of Civil Appeals of Texas. Dallas.
April 16, 1938.

Rehearing Denied May 14, 1938.

W. S. Barron, of Bryan, and John Davis, of Dallas, for appellants.

Renfro & Kilgore, of Dallas, for appellee.

BOND, Chief Justice.

This is an appeal from a judgment in favor of Rutland Savings Bank for debt in the sum of $22,748 with interest from date of judgment and foreclosure of a deed of trust lien on 745 acres of land in Burleson county, Tex. The appeal is predicated upon alleged usurious loan transactions.

On February 20, 1920, appellant W. A. Boyett borrowed $30,000 from Deming Investment Company, evidenced by one principal note for $25,000, due February 1, 1930, bearing 6 per cent. interest per annum, according to interest coupons attached thereto and secured by deed of trust on said land; and the balance of the principal ($5,000), included in a series of second lien notes secured by a separate deed of trust. The second lien notes evidence the following: Note 1 for $3,700, due February 1, 1921; note 2 for $3,550, due February 1, 1922; note 3 for $900, due February 1, 1923; note 4 for $900, due February 1, 1924; and note 5 for $900, due February 1, 1925. These five notes—other than $2,500 in note 1 and $2,500 in note 2, representing the $5,000 balance of money borrowed—were executed to the Deming Investment Company for commissions contracted to be paid for negotiating the loan.

The acceleration clause of the deed of trust securing the above five second lien notes reads as follows: " * * * if default be made in the payment of any of said notes, or in the performance of any of the covenants, agreements, terms or conditions * * * the whole sum of money herein secured may, at the option of the holder of the notes, and without notice, be declared due and payable at once, and this mortgage may thereupon be foreclosed im-

mediately for the whole sum of said money, interest and costs. Anything in this mortgage or said notes contained to the contrary, notwithstanding."

On February 1, 1921, Boyett paid $1,-412.45 interest on the $25,000 note, and paid the first of the second lien notes in the sum of $3,700 and, on February 1, 1922, paid $1,500 annual interest on the principal note, but did not pay note 2 of the second series, in the sum of $3,550. This obligation remained delinquent from February 1, 1922, until September, 1922, at which time Deming Investment Company caused the land in question to be sold under the powers of the deed of trust and a trustee's deed executed to one E. E. Ford, who became the purchaser at such sale for a recited consideration of $4,350 cash, subject to the prior mortgage of $25,000, and the three commission notes of $900 each, due February 1, 1923, 1924, and 1925, respectively.

On January 1, 1923, Ford, being the legal owner of the land, entered into a rental contract with Boyett covering the property purchased at the trustee's sale; and, also, a written sales contract, wherein Boyett agreed to rent the property for the year 1923, and thereafter purchased the property at the sum of $9,507.30, and assumed the payment of the $25,000 principal loan, described in the first deed of trust above mentioned, and of the $900 commission notes, due respectively February 1, 1924 and 1925, described in the second deed of trust.

On February 4, 1924, Boyett having satisfied Ford for the cash consideration, agreed upon in contract of January 1, 1923, Ford executed to him a deed for said land, reciting the consideration: "Ten Dollars paid and the assumption by W. A. Boyett of a first mortgage of $25,000 in favor of the Deming Investment Company * * *; and a second mortgage note for $900 due February 1, 1925 * * *". Boyett accepted the deed, and thereafter as it became due paid the annual interest of $1,500 on the $25,000 note, and $3,000 on the principal; and, in February, 1930, the balance of the $25,000 note, having become due, Boyett renewed and extended the indebtedness, by executing five other notes, payable to Deming Investment Company, for $2,-000 each, and one note for $12,000, each bearing 6 per cent. interest per annum until paid, and due respectively February 1, 1931, 1932, 1933, 1934, 1935, 1936, and

executed a deed of trust to secure their payment. The deed of trust recites: "* * * the whole sum of money herein secured and all interest thereon to the date of payment thereof, to be computed at ten per cent per annum from the date of the exercise of the option herein, may, at the option of the holder of the notes hereby secured, and without notice, be declared due and payable at once * *. * ."

Simultaneously with the execution of the above notes and deed of trust, Boyett also executed three other notes, payable to the Deming Investment Company, in the sum of $570 each, due respectively February 1, 1931, 1932, and 1933, and secured by a second deed of trust lien on said property. This deed of trust recites: "* * * the notes secured by this deed of trust * * * represent the earned commission which the party of the first part agreed to pay to third party for the negotiation of said loan, regardless of any payment on the first lien note prior to its maturity * * *". And, further, if default shall be made, then "The whole sum of money herein secured may, at the option of the holder of the notes * * * be declared due and payable at once * * *".

Subsequent to the execution of the two sets of notes above described, aggregating the sum of $22,000 and $1,710, respectively, and before the maturity of any of them, the Rutland Savings Bank, in due course, became the owner of the first series of notes and thereafter received payment of interest thereon in the sum of $1,320. All other payments on the loan—principal, interest, and commissions—had theretofore been paid to the Deming Investment Company. The second series of notes, having been retained by Deming Investment Company, were, on May 14, 1935, canceled without payment, and, in lieu of all such indebtedness and liens, Boyett executed to Deming Investment Company two other notes—one in the sum of $200, due September 1, 1935, and the other for $300, due December 1, 1935, without security.

The trial of the case being to the court without a jury, judgment was entered denying to defendant Boyett credit for any claimed usurious payments, paid to the Deming Investment Company upon the 1920 loan transaction, allowing Boyett credit for the $1,320 interest paid to plaintiff, Rutland Savings Bank, upon the 1930 renewal transaction, and, in favor of plaintiff for the principal balance of $20,680, with in-

terest only from the date of judgment, and ten per cent. attorney's fee, aggregating the sum of $22,780. Both parties appealed from the adverse portion of the judgment.

The appeal presents two separate loan transactions, involving, however, a single loan. In order for the contracts to be usurious, it must be shown that it was contemplated that the lender should be able to collect more than $3,000 per annum on the principal loan. For convenience, the transactions will be designated by the date of their consummation.

In the 1920 transaction, Boyett borrowed $30,000 from the Deming Investment Company, secured, with other monetary obligations, by two separate deeds of trust: $25,-000, evidenced by note, bearing six per cent. interest per annum ($1,500) from the date of the note until paid, and the balance, $2,500, was included in a $3,700 note, due one year after date, and $2,500 in a $3,550 note, due two years after date, each bearing interest after maturity. In addition thereto, Boyett further obligated himself to pay Deming Investment Company commissions for negotiating the loan; $1,200 of the commissions was included in the above $3,700 note; $1,050 included in the $3,550 note, and the balance in three other notes of $900 each, due three, four, and five years after date of the transaction. Thus, it will be seen that, for the year 1920, the borrower obligated himself to pay, $1,500 interest on the $25,000 note, and $2,500 principal of money loaned, and $1,200 commissions, aggregating $5,200, of which $2,700 was interest or charge for the use of $30,-000. For the second year, 1921, the borrower was obligated to pay $1,500 annual interest, $2,500 principal, and $1,050 commissions, aggregating $5,050, of which $2,550 was interest or charge for the money loaned; and for each of the next three years, the charges were $1,500 on interest and $900 commissions, total $2,400, and thereafter, only $1,500 interest was obligated to be paid.

Obviously, according to the reading of the notes, the annual charge for the use and detention of the money loaned would not exceed, in any one year, the legal rate of ten per cent. interest.

The alleged usurious vice in the 1920 transaction centers on the acceleration clause in the deed of trust securing the five second-lien notes, viz.: "If default be made in the payment of any of said notes or in the performance of any of the covenants, agreements, terms or conditions herein * . * . *, *the whole sum of money herein secured* (italics ours) may at the option of the holder of the notes, and without notice, be declared due and payable at once and this mortgage may thereupon be foreclosed immediately for the whole sum of said money, interest, and costs, anything in this mortgage or said notes contained to the contrary notwithstanding * * * ." This clause, permitting the acceleration of the maturity of "the whole sum of money herein secured," does not permit the acceleration of notes composing commission charges. "Money herein secured" cannot be construed to mean the borrowers' obligations or notes, to pay unearned interest or commissions. Five thousand dollars of the notes to which the acceleration clause has application was, indeed, money loaned for which the deed of trust was given to secure, and the contracting parties therein agreed that, if default be made in the payment of any of said notes, then, only the obligation for "money secured"—that is, the $5,000—may be declared due and payable and the mortgage foreclosed "for the whole sum of money, interest and costs."

The same contracts here involved were under consideration in the case of Deming Investment Co. v. Giddens et ux., 120 Tex. 9, 30 S.W.2d 287; Id., Tex.Civ.App., 41 S.W.2d 260, and, as there presented, the contracts were held usurious. However, an analysis of the Giddens decisions discloses that they were based on the acceleration clause permitting, if default be made in the payment of the second lien notes, "the holder of the series of five notes to declare all due and payable at his election." Evidently, such contracts as disclosed in that case are condemned as illegal under the usury statutes of this state; there is no such provision in the contracts here presented, the holder of the series of five notes is permitted, in case of default, to declare "the whole sum of money herein secured" due and allow foreclosure of the mortgage only for the payment of said money (the money loaned and secured).

Giving effect to the intention of the parties as reflected in the contracts and the presumption that all contracts must be held legal, unless otherwise clearly shown, we think no other conclusion can be reached than that the parties intended to permit the acceleration and foreclosure only on default of payment of notes representing "money loaned and secured," and that default in

payment of unearned interest, or commission notes, was not intended to be accelerated. However, be that as it may, the subsequent transaction, we think, effectively purged all imputation of usury in this transaction, and estopped appellants to claim any illegality therein.

It will be observed that the Deming Investment Company, under the powers of the deed of trust, caused the property in question to be sold to E. E. Boyd, thereby completely divesting title, out of Boyett and vesting same in another. Ford, in that transaction, assumed the payment of the outstanding indebtedness; and, on February 14, 1924, executed a deed to Boyett to the property which recited the consideration as "$10.00 cash and the assumption by Boyett of the $25,000 first lien note and a second lien note of $900," being the same indebtedness evidenced by notes and deeds of trust theretofore executed by Boyett to the Deming Investment Company.

It is not pleaded, nor has there been any attempt made to prove that the foreclosure and the subsequent repurchase of the property by Boyett was to provide a cloak for the collection of usury. No attack has been made upon the validity of the deed of trust sale, and none upon the deed to Boyett. Therefore, Boyett waived usury, purged the contract of the vice, and estopped himself from afterwards insisting upon usury in avoidance of his assumed obligations.

Under the decisions of the Supreme Court, dealing with the principle of estoppel by election, Boyett's acceptance of the deed bound him to all its covenants and recitals therein contained. Doty v. Barnard, 92 Tex. 104, 47 S.W. 712; Waco Bridge Co. v. City of Waco, 85 Tex. 320, 20 S.W. 137; Cleveland State Bank et al. v. Gardner et al., Tex.Com.App., 286 S.W. 173; Totton v. Smith, Tex.Sup., 113 S.W. 2d 517. The general doctrine on this subject is announced in 27 R.C.L. 288, § 89, as follows: "A vendee who as a part of the purchase price assumes and agrees to pay a mortgage on the property sold, is estopped from asserting that the obligation secured thereby is usurious. This is particularly true where the promise to pay is included in the deed. The whole title of the vendee rests upon the conveyance, and the continued existence of the mortgage, as an incumbrance, forms a part of it. He cannot be permitted to claim title both under and against the same deed; to insist upon

its efficacy to confer a benefit, and repudiate a burden with which it is qualified; to affirm a part and reject a part."

In the case of Bookhout et al. v. McGeorge, Tex.Civ.App., 65 S.W.2d 512, one Robert Davis executed a loan contract which clearly was usurious. Being unable to pay the loan, Davis conveyed the property to V. A. Skipper, a representative of the loan company. Later the land was conveyed back to Davis by general warranty deed, in which was recited a consideration of $1 and "the further consideration of said Davis assuming to pay the balance due Oklahoma Farm Mortgage Company on a debt made by Robert Davis." This court, opinion by Mr. Justice Looney, held that the transaction was sufficient to purge the contract of usury, regardless of the original liability of Davis upon the loan. Also, see, Van Meter v. American Central Life Ins. Co., Tex.Civ.App., 78 S. W.2d 251; Volunteer State Life Ins. Co. v. Robinson, Tex.Civ.App., 74 S.W.2d 188; National Bond & Mortgage Corp. v. Mahanay, 124 Tex. 544, 80 S.W.2d 947; Moore et ux v. Temple Trust Co., Tex.Civ. App., 60 S.W.2d 828. It follows that, if any usury existed in the 1920 loan contract, such usury was purged by the subsequent foreclosure and reconveyance to Boyett, and the trial court did not err in refusing to credit payments made by Boyett to the Deming Investment Company.

In the 1930 transaction, it is conceded that the contract is usurious. The 1930 renewal contains provisions with reference to the acceleration of maturity of the three $570 commission notes, and the sale of the property under the second deed of trust, which are not present in the 1920 contract. It will be seen that, by this contract, for the year 1930, the lender could exact of Boyett six per cent. ($1,320) of the loan of $22,000, and accelerate the maturity of the three $570 notes ($1,710), making a charge of $3,030 for the use of the $22,000 principal, balance. Clearly, the contract was usurious, and the trial court did not err in allowing appellant credit for the $1,320, paid to appellee on such illegal transaction.

However, subsequent to the execution of the usurious contract, appellant Boyett and the Deming Investment Company, owner of the three $570 commission notes, entered into a settlement of these notes, none of which having been paid, culminating in their cancellation on May

14, 1935, and Boyett executing, in lieu thereof, two other notes in the sum of $200 and $300, respectively. We think this novation effectively eliminated the usurious features from the 1930 loan transaction, and that appellee, from the date of such novation, was entitled to interest on the balance due on its notes. Stout et al. v. v. Ennis Nat. Bank, 69 Tex. 384, 8 S.W. 808; Cotton States Bldg. Co. v. Jones et ux., 94 Tex. 497, 62 S.W. 741.

The court below having allowed appellee interest on the $20,680 only from the date of the judgment, May 30, 1936, whilst it was entitled to six per cent. interest from the date of the above novation, May 14, 1935, plus the principal and ten per cent. attorney's fee on the principal and interest; accordingly, the judgment is reformed and, as reformed, affirmed.

Reformed and affirmed.

YOUNG, J., not sitting.